PHILLIPS ET AL., APPELLANTS, *v.*
GOOD SAMARITAN HOSPITAL ET AL.;
MEDICAL RADIOLOGISTS, INC., ET AL., APPELLEES.

[Cite as Phillips v. Good Samaritan Hospital (1979),
65 Ohio App. 2d 112.]

(No. CA-6189—Decided July 16, 1979.)

*Mr. James P. Jones,* for appellants.
*Messrs. Bieser, Greer & Landis* and *Mr. David C. Greer,* for appellees.

CRAMER, J.   This is a medical malpractice action here on appeal from a judgment of the Court of Common Pleas of Montgomery County granting summary judgment in favor of two defendants, Medical Radiologists, Inc., and G. William Bretz, M.D., thereby relieving them from this action. Appellants are the plaintiffs in the original complaint, Paula Phillips, a minor, and her father and mother, Paul and Shirley Phillips. Appellees, Medical Radiologists and Dr. Bretz, were joined as defendants by amended pleadings. Numerous other defendants remain in the action. We also have before us the motion of appellants seeking to reopen the hearing on the motion for summary judgment for the purpose of presenting additional evidence which appellants maintain was subsequently discovered and which could not, with reasonable diligence, have been discovered prior to the trial court's judgment.

The facts giving rise to the complaint involve the injury on April 26, 1975, of a four year old child while playing. The child, Paula, was taken to the emergency room at Good Samaritan Hospital for examination and treatment which included the taking of X-rays. The treating physician, Dr. Joseph Premananden, diagnosed the injury negative for fracture and recommended as treatment the use of an Ace bandage and aspirin. Paula was released after only a two hour stay. Early the next day, Dr. Bretz, a radiologist employed by Medical Radiologists, a professional group regularly performing professional services at Good Samaritan under a promise of service, read the X-rays, and contrary to the diagnosis of the treating physician, found that there was indeed a fracture of the distal portion of the humerus in the area of the elbow with an eight millimeter displacement. As was his usual practice in interpreting X-rays, the doctor recorded his diagnosis on a dic-

tating machine for later reporting by a hospital secretary. Due to some failure in communication, for which there is no explanation at this point in the litigation, neither the treating physician, Dr. Premananden, nor the disclosed family physician, Dr. Haywood, was made aware of the inconsistent diagnosis of Dr. Bretz. More importantly, the child's parents remained uninformed of this subsequent revelation. The parents brought their child in for emergency treatment—the family physician was unaware of the occurrence which brought the child to the hospital.

Only after the passing of several months were Paula's parents first to learn through consultation of another physician that their child had been suffering from a broken arm. A medical procedure known as an "open reduction" involving calcium removal and the physical realignment of the fractured area was then required. Since the fracture was in a growth area of the bone, appellants fear deformity and the potential of future surgery.

In proceeding to discuss the sole assignment of error raised on this appeal, that the trial court erred in granting summary judgment, we feel it important to address the standard of review to be applied in entertaining a motion for summary judgment. Civ. R. 56 makes applicable the traditional standard that a moving party is entitled to summary judgment only when there is no genuine issue as to any material fact. A genuine issue of fact may be found to exist where competing reasonable inferences may be drawn from undisputed underlying evidence or where the facts presented are uncertain or indefinite. Such issues should be left to the trier of facts. See, e.g., *Duke* v. *Sanymetal Products Co.* (1972), 31 Ohio App. 2d 78 (negligence action; jury question presented whether party acted in the capacity of a servant or independent contractor). Disposition on summary judgment is appropriate only when reasonable minds can come to but one conclusion and that conclusion must be adverse to the party opposing the motion. It is essential that the foregoing principles be borne in mind as we reach the issues raised on the facts before us.

The physician-patient relationship is one of special trust and confidence in which the physician has a duty of due care and diligence to the end that recovery may be had. *Gillette* v. *Tucker* (1902), 67 Ohio St. 106, 121-22. As part of that duty the

physician must "reveal to the patient that which in his best interest he should know." Annotation 49 A.L.R. 3d 501, 504 (the annotation discusses generally the liability of a physician for malpractice where he has failed to notify the patient of an unfavorable diagnosis of the patient's condition). As a result of a serious breach of communication of the medical professionals in this action, a child may be found to have suffered serious and even permanent injury. It is a wrong for which the law provides a remedy. The primary question posed in this case is who is responsible. Appellants argue that the radiologist, although he correctly diagnosed the injury, must share liability if he is found to have failed in adequately communicating the diagnosis so as to reveal the error of the attending physician. They look to the harm that may result. Appellees argue that the liability of the radiologist stops once he has made a correct medical interpretation that is circulated through established channels of the hospital, justifying a limitation for the reason that radiologists are merely indirect providers of patient care.

The effect of an affirmance of the judgment of the trial court would be to hold that a doctor could not be found liable for malpractice where there was a proper diagnosis despite what may have been a failure on the doctor's part to adequately communicate that diagnosis, thereby denying the suffering patient the opportunity to benefit from the consultant's services. Such a proposition we are unable to accept. As the facts so glaringly reveal, the communication of a diagnosis so that it may be beneficially utilized may be altogether as important as the diagnosis itself.

Where, as here, the parents of the child patient have before them a misdiagnosis, the inadequate communication of the correct diagnosis of a specialist can result in greater suffering due to their justified reliance on the physicians to inform them of an injury needing immediate attention. To have received a charge for the specialist's services without information that would reveal an inconsistency with the prior diagnostic posture may have created the false impression that the specialist merely concurred in the original diagnosis. As a result, it is foreseeable that they would find it unnecessary to seek further medical advice that most likely would disclose an injury earlier in point of time so as to avoid complications, lack of timely correction, and delayed healing. Weighing the facts

and competing inferences, as we must, in a light most favorable to the party opposing summary judgment, it is possible to find the existence of a causal relationship between a breach of duty and the injury suffered.

We are unable to agree with appellees that radiologists, and kindred specialists, who merely provide what they term "indirect medical care" may somehow categorically escape all liability once such a practitioner has made a correct analysis and has done no more than to relay this information through ordinary hospital channels. Once the physician-patient relationship has been found to exist, as could well be found here, the professional responsibilities and duties exist despite the lack of proximity, or the remoteness, of contact between the two as where a consulting physician is involved in the case in only a limited manner. Therefore, all physicians involved in a case share in the same duties and responsibilities of the primary care physician to the extent of their involvement. It is incumbent upon these medical professionals to coordinate their efforts in a manner that best serves their patient's well-being.

What then is the duty owed by a physician in communicating the diagnosis? The particular form of communication must depend on the facts and circumstances of the case. The fact that a physician may only be an indirect provider of medical care is but one relevant circumstance. In some situations indirect service may provide justification for the absence of direct communication with the patient, but that does not in any way justify failure of communication with the primary care physician. *Merriman* v. *Toothaker* (1973), 9 Wash. App. 810, 515 P. 2d 509 is illustrative. In that case a patient received "emergency care for injuries sustained in an automobile accident." *Id.*, at page 811. The treating physician "concluded that***[the patient] had sustained a bruised and sprained neck." *Id.* The radiologist, on the other hand, found ligament damage. The radiologist's report and the hospital clinical records were mailed by the treating physician, the defendant, to the attending physician who never received the communication. The patient's injury eventually required surgery. Importantly, the failure of effective mailing was considered immaterial by the court for the reason that community medical

standards required telephone communication in such a case where the danger of paralysis existed from inattention.

The exigencies of the medical situation may call for correspondingly different levels of response. Severity of condition, urgency of treatment, potential for interim injury, suffering from delayed response, need for further analysis and consultation, and the patient's awareness of the extent of injury or the nature of the condition may all be relevant in ascertaining the necessary course of conduct in reporting a diagnosis. In certain situations direct contact with the treating physician is necessary beyond communication through administrative personnel. Certain medical emergencies may require the most direct and immediate response involving personal consultation and exchange. The physician should be permitted to present evidence on any justification he may have had for responding in the manner in which he did. As we have stated, the form of communication depends on all the facts of the case and it is an issue best left to the trier of fact. It is particularly appropriate that the trier of fact make this assessment through the informed consideration of each indicium of medical fact, drawing what it believes to be the most reasonable inferences that in turn counsel the appropriate level of response.

This appropriate level of response as to the need for communication must necessarily depend upon expert testimony in order to establish such factors as the immediacy of need for treatment as it relates to the diagnosis and the harm likely to result from inattention. As to the content of the communication, not only must the physician apply that degree of care employed by other members of his profession under similar circumstances, see *Gillette* v. *Tucker* (1902), 67 Ohio St. 106, but additionally, as a result of the physician and patient relationship, the physician has a duty to act with good faith. Annotation 49 A.L.R. 3d 501, 506, 508. These matters would also call for expert testimony.

Modes of communication, however, are not so peculiarly within the expertise and knowledge of the medical profession so as to necessitate expert testimony. The manner of communication, unlike urgency and content that depend upon medical facts, is not so complex and technical that it should

escape the comprehension of a layman jury. In so holding, we merely apply the general principle that a party need not "submit expert testimony in order to have the case submitted to the jury, where [a] violation of the defendant's duty to the patient is otherwise made to appear." 42 Ohio Jurisprudence 2d 676, 677, Physicians and Surgeons, Section 158. Once the need for a communication, and the necessary information that it should contain, have been established, the trier of fact should be able to pass on the issue of adequacy of the communication bearing in mind the facts available to the parties at the time the communication was made.

In the instant case, the trier of fact should be permitted to pass on the issue of the adequacy of the radiologist's communication. Not only did he interpret the X-ray revealing a fracture that required immediate medical attention, but moreover, the physician stated during the taking of his deposition that examination of the bones near the elbow was very difficult. Frequently, it is unclear whether the picture shows a fracture cleft or cartilage of a growing child, a feature that may only be ascertainable by the trained specialist. We are unable to say, as the trial court must have decided, that as a matter of law, the radiologist breached no duty to the patient when he merely recorded his diagnosis for further reporting by the hospital administration. Based on our discussion of the issues, it is altogether possible that the trier of fact may decide that this form of communication was inadequate and that, therefore, the radiologist breached a duty to his patient.

For the reason that we must reverse the trial court, we remand the cause for further proceedings with appellees joined as defendants. Holding as we do that summary judgment was erroneously granted, it is unnecessary to pass on appellant's motion to reopen proceedings on summary judgment.

*Judgment reversed*
*and cause remanded.*

SHERER, P. J., and ZIEGEL, J., concur.

SHERER, P. J., of the Second Appellate District, retired, CRAMER, J., of the Court of Common Pleas of Butler County, retired, and ZIEGEL, J., of the Court of Common Pleas of Preble County, retired, were assigned to active duty under authority of Section 6(C), Article IV, Constitution.