FOWERBAUGH, Exr., Appellant,

v.

UNIVERSITY HOSPITALS et al., Appellees.

[Cite as *Fowerbaugh v. Univ. Hospitals* (1997), 118 Ohio App.3d 402.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 69816.

Decided March 3, 1997.

*Thomas S. Hudson,* for appellant.

*Gallagher, Sharp, Fulton & Norman, John B. Robertson* and *Joseph E. Cavasinni,* for appellees.

---

KARPINSKI, Judge.

Plaintiff-appellant, Albert Fowerbaugh, executor of the estate of Eileen Egyed, appeals from a jury verdict in favor of defendants-appellees, Young–Sun Yoon, M.D. and University Imaging, Inc., on the claim against them for failure to timely diagnose and treat Egyed's lung cancer.

Fowerbaugh commenced this medical malpractice/wrongful death action by filing a complaint against five defendants: (1) decedent's treating physician, Michael Nochomovitz, M.D.; (2) his practice group, University Physicians, Inc.; (3) University Hospitals of Cleveland; (4) radiologist Yoon; and (5) his radiologist group, University Imaging. Fowerbaugh voluntarily dismissed his claim against University Hospitals and settled and dismissed his claims against Dr. Nochomovitz and University Physicians.

The case proceeded to a jury trial against Yoon and University Imaging on October 2, 1995. The evidence revealed that Egyed sought treatment from Dr. Nochomovitz and University Physicians more than ten years earlier in August, 1985. Egyed was sixty-five years of age, had been a longstanding smoker, and complained of shortness of breath. Nochomovitz diagnosed her as suffering from obstructive pulmonary disease. Egyed was treated with various medications

until referred to Dr. Yoon and University Imaging for a chest x-ray more than four years thereafter on October 6, 1989.

Dr. Yoon observed a "patchy density" in the completed x-ray of Egyed's lower right lung. The exact cause of the "patchy density" was not clear from the x-ray and Dr. Yoon recommended further evaluation to rule out neoplasm.[1] Dr. Yoon dictated findings, which were transcribed into a typewritten report; however, the parties presented conflicting evidence concerning the distribution of the report. University Imaging routinely distributed copies of such reports to the referring physician, the x-ray department, and the patient's chart. There is no dispute that a copy of Yoon's October 10, 1989 typewritten report was placed on Egyed's chart in treating physician Nochomovitz's office file.

Nochomovitz testified that he generally reviewed such written reports on receipt and admitted that the document might contain a mark he placed on it to indicate that he had seen it. It is clear from the record, however, that radiologist Dr. Yoon did not also initiate contact with Dr. Nochomovitz or Egyed to communicate orally the content of his report. Dr. Nochomovitz did not request such an oral report from Dr. Yoon, and the report as orally dictated was available to Dr. Nochomovitz, before and after the report was transcribed, by initiating a telephone call through a push-button telephone system.

Plaintiff's expert, Dr. Jeffrey Crass, stated that Dr. Yoon should have made a telephone call to communicate orally his report to Dr. Nochomovitz. This testimony concerning the proper standard of care was contradicted by Dr. Yoon and defense experts Paul Wheeler, M.D., Thomas Jackson, M.D., and Richard Christie, M.D., who testified that oral communication was not necessary given the distribution of the written report. Neither plaintiff's nor defendants' experts testified, to a reasonable degree of medical certainty, that the standard of care required Dr. Yoon to communicate the report in any form directly to Egyed, the patient.

Egyed did not receive the recommended follow-up care. Approximately thirty-four months after the x-ray, Egyed was diagnosed with advanced lung cancer when she was being treated for an unrelated condition. Egyed died from bronchogenic adenocarcinoma (cancer) approximately six months later at seventy-eight years of age on February 17, 1993. Fowerbaugh's sole claim was that Egyed did not receive appropriate follow-up care because of the inadequate communication of the x-ray report.

---

1. The record contains no criticism of Dr. Yoon's reading of the x-ray. There were a multitude of possible explanations for the "patchy density," including, *inter alia*, blood, other fluid, abnormal tissue, and pneumonia as well as a malignant or benign neoplasm.

Prior to the submission of the case to the jury, Fowerbaugh filed a written request for instructions. In addition to the standard medical malpractice Ohio Jury Instructions, the trial court delivered only one of three paragraphs Fowerbaugh proposed as instructions. The jury unanimously returned a general verdict for defendants and, in a special interrogatory, found that they did not breach the applicable standard of care.[2] Fowerbaugh appeals from the trial court's judgment on the jury verdict, raising the following sole assignment of error:

"The trial court erred to the prejudice of the plaintiff in failing to deliver an instruction provided by plaintiff that the radiologist may have a direct professional obligation to the patient, and that that obligation may include the duty to communicate information."

This assignment lacks merit.

Fowerbaugh argues that the trial court did not properly instruct the jury concerning the scope of Dr. Yoon's duty to communicate his x-ray report. Specifically, Fowerbaugh argues that the trial court omitted essential information when it omitted part of his proposed instructions. From our review of the record, we find that Fowerbaugh has failed to show reversible error under the circumstances of this case.

Fowerbaugh's proposed instruction concerning Dr. Yoon's duty to communicate follows in its entirety:

"PHYSICIAN'S DUTY TO COMMUNICATE

"*Phillips v. Good Samaritan Hospital* (1979) 65 Ohio App.2d 112, 19 O.O.3d 66, 416 N.E.2d 646.

"The physician-patient relationship is one of special trust and confidence, in which the physician has a duty of due care and diligence, and as part of that duty the physician must 'reveal to the patient that which in his best interest he should know.' *Phillips, supra*, Syllabus Paragraph 1; *Turner v. Children's Hospital* (1991) 76 Ohio App.3d 541, 602 N.E.2d 423.

"Once the physician-patient relationship has been found to exist, the professional responsibilities and duties exist despite the lack of proximity, or the remoteness, of contact between the two, as where a consulting physician is involved in a case in only a limited manner. Therefore, all physicians involved in a case share the same duties and responsibilities of the primary care physician to

---

2. The trial court simplified the case by instructing the jury concerning Dr. Yoon and stating that the issues concerning his radiology group, University Imaging, should be resolved in the same manner. No party objected to this procedure and this matter is not challenged on appeal.

the extent of their involvement. It is incumbent upon these medical professionals to coordinate their efforts in a manner that best serves their patient's well-being. *Phillips, supra,* at 116, 19 O.O.3d at 69, 416 N.E.2d at 649.

"When a physician has a duty to communicate a diagnosis, the particular form of the communication must depend on the facts and circumstances of the case. Among the circumstances you may consider are the severity of the condition, urgency of treatment, potential for interim injury, suffering from delayed response, need for further analysis and consultation, and the patient's awareness of the extent of injury or nature of the condition. Certain medical emergencies may require the most direct and immediate response involving personal consultation and exchange. *Phillips, supra,* at 117, 19 O.O.3d at 69–70, 416 N.E.2d at 649–650."

The trial court did not deliver the first two paragraphs or the final sentence of the third paragraph of the requested instructions.

During discussion of these proposed instructions in the trial court, counsel for Fowerbaugh mentioned only the *Phillips* case, but did not articulate any other reason during his five-sentence, one-paragraph argument to support the proposed instructions. Counsel did not make any further comments after the trial court instructed the jury, and his brief on appeal likewise cites only *Phillips* on this point. Fowerbaugh's reply brief on appeal broadens the focus of the argument and, citing additional authority, adds new contentions.

▮ The record shows, contrary to Fowerbaugh's arguments, that the jury was adequately instructed in this case. Fowerbaugh first argues that his proposed jury instruction was quoted verbatim from the syllabus of *Phillips v. Good Samaritan Hosp.* (1979), 65 Ohio App.2d 112, 19 O.O.3d 66, 416 N.E.2d 646. We note initially that the syllabus in Ohio appellate court opinions, unlike the syllabus of Ohio Supreme Court opinions, does not establish the law of the case. Compare Rules 2(F) and 1(B) of the Supreme Court Rules for the Reporting of Opinions. Moreover, even if the syllabus of an appellate opinion did state the law of the case, it is well settled that a trial court is not required to deliver verbatim all requested instructions.

▮ Proposed instructions not only must contain a correct statement of the law, but also must be adapted to the case and so explicit so as not to be misunderstood or misconstrued by the jury. *Marshall v. Gibson* (1985), 19 Ohio St.3d 10, 12, 19 OBR 8, 10, 482 N.E.2d 583, 585. Fowerbaugh's proposed instructions did not satisfy these requirements. *Phillips* and the other cases cited by the parties recognize that the scope of consulting physicians' duty to communicate findings, orally or in writing, to referring, treating, or primary care physicians or directly to the patient depends on the circumstances of the case.

None of the cases provides that consulting physicians have an absolute duty to communicate their findings to the patient directly, either orally or in writing.

 Merely reciting the general principles from *Phillips* as requested by Fowerbaugh, without stating how they applied to the facts of this case, would not have properly assisted the jury in making its determination. The trial court properly omitted the first two paragraphs and the last sentence of Fowerbaugh's proposed instructions because they did not limit the doctor's duty relative to the circumstances of the case.[3] By ignoring this essential limitation, the proposed instructions could have been misunderstood or misconstrued by the jury to indicate that a consulting physician always had an absolute duty to communicate to the patient and/or treating physician. Fowerbaugh did not suggest any refinements to her proposed instructions to avoid these problems.

The scope of Dr. Yoon's duty to communicate his radiological findings was disputed by the parties. Plaintiff's expert Dr. Crass opined that Dr. Yoon should have communicated orally his report to the decedent's treating physician. Three defense experts, Drs. Wheeler, Jackson and Christie, testified to the contrary that Dr. Yoon had no duty to communicate his findings orally to anyone in this case after he transmitted his written report to the treating physician.[4]

None of the experts stated that Dr. Yoon had a duty to communicate directly to Egyed, the patient, rather than through Dr. Nochomovitz, her treating physician. Paragraph one of Fowerbaugh's proposed instructions, which indicated that Dr. Yoon had a duty to communicate to the patient, was not supported by the evidence and did not clarify whether this duty could be satisfied by communicating with the patient's treating physician. Fowerbaugh's newly asserted reliance on *Meinze v. Holmes* (1987), 40 Ohio App.3d 143, 532 N.E.2d 170, is misplaced for precisely this reason. The *Meinze* court specifically held that a physician's duty to communicate to a patient could be satisfied by delivering a written report to the patient's treating physician. *Id.* at 148, 532 N.E.2d at 174–175.

---

**3.** In *Phillips,* for example, the x-ray revealed a broken arm that needed to be set immediately, but had been misdiagnosed by the treating physician. No such emergency treatment was required in the case at bar. The trial court delivered verbatim the factors proposed by Fowerbaugh concerning the need for rapid communication. Further instructing the jury with Fowerbaugh's final proposed sentence concerning medical emergencies would have diverted the jury's attention, unduly emphasized this matter, and distracted the jury from the other specific factors in its instructions. *Cleveland Elec. Illum. Co. v. Astorhurst Co.* (1985), 18 Ohio St.3d 268, 272–273, 18 OBR 322, 325–326, 480 N.E.2d 794, 797–799.

**4.** The standard of care concerning the oral communication of x-ray reports, in addition to the delivery of written reports, has evolved recently. See *Duckworth v. Lutheran Med. Ctr.* (Jan. 25, 1995), Cuyahoga App. Nos. 65738 and 65995, unreported, 1995 WL 33070.

*Turner v. Children's Hosp., Inc.* (1991), 76 Ohio App.3d 541, 602 N.E.2d 423, cited by Fowerbaugh, is equally distinguishable. The *Turner* court held that there was a duty to communicate directly to the parents of the infant patient any risks concerning adverse reactions to immunization shots, but this duty was supported by standard-of-care testimony to a reasonable degree of medical certainty. The case *sub judice* provides no such testimony. See *id.* at 555, 602 N.E.2d at 431–432.

Paragraph two of Fowerbaugh's proposed instructions is similarly capable of being misunderstood or misconstrued by failing to clarify how a consulting doctor might satisfy a general duty to "coordinate" among physicians. *Meinze,* cited by Fowerbaugh for the first time on appeal, discusses this aspect of physicians' duty to communicate. The court held that a physician brought in to review a matter has a duty to communicate conclusions to either the treating physician or patient but not both. *Id.* at 148, 532 N.E.2d at 174–175. The *Meinze* court specifically rejected the argument that an examining physician had a duty to intervene by stepping between the treating physician and the patient to explain in detail or to advise of different treatment based on his findings. *Id.*

Fowerbaugh's reliance on *Phillips* to support this requested instruction is misplaced because Phillips is distinguishable from the case at bar. Unlike Phillips, the record *sub judice* shows that Egyed's treating physician received the radiologist's written x-ray report because it was placed on her chart in his office. Fowerbaugh's own expert, Dr. Crass, conceded that if Egyed's treating physician received the written report, he had sufficient time to respond to Dr. Yoon's recommendation. Finally, unlike the physician in *Phillips,* Dr. Yoon did not need to rely solely on delivery of the written report through ordinary channels because the information in Dr. Yoon's report was available orally to Egyed's treating physician by listening to the dictated findings through the push-button telephone system.

The trial court avoided these defects in Fowerbaugh's proposed instructions by specifically instructing the jury concerning Dr. Yoon's general duty of care and duty to communicate as follows:

"You've heard reference to negligence throughout the course of this trial. What is negligence? Negligence is a failure to use ordinary care. Every person, all of us are required to use ordinary care to avoid injuring another person or another's property.

"Ordinary care is the care that a reasonably prudent, cautious person would use under the same or similar circumstances. In deciding whether ordinary care was used, you will consider whether the defendant ought to have foreseen under the circumstances that the natural and probable result of an act or failure to act would cause some injury.

"The test of foreseeability is not whether he should have foreseen the injury precisely as it happened to the specific person. The test is whether under all the circumstances a reasonably prudent person would have anticipated that injury was likely to result to someone from the act or failure to act.

"If the defendant, by the use of ordinary care should have foreseen some injury and should have not acted [sic], or if they [sic] did act, should have taken precautions to avoid the result, then performance of the act or the failure to act is negligence.

"The existence of a physician/patient relationship places on the physician the duty to act, as would a physician of ordinary skill, care, and diligence under like or similar circumstances or conditions.

"The standard of care is to do those things which such a physician would do, and to refrain from doing those things which such a physician would not do. If you find by the greater weight of the evidence that the defendant failed to use that standard then you you [sic] may find that he was negligent.

"A specialist is a physician who holds himself out [as] specially trained, skilled and qualified in a particular branch of medicine. The standard of care for a physician in the practice of an expert is that of a reasonable specialist practicing medicine in that same specialty, regardless of where he practices.

"A specialist in any one branch has the same standard of care of all other specialists in that branch. If you find by a greater weight of the evidence that the defendant failed to use that standard of care, then you may find that he was negligent.

"*When a physician has a duty to communicate a diagnosis, the particular form of the communication must depend on the facts and circumstances of each case. Among the circumstances you may consider are the severity of the condition, urgency of treatment, potential for interim injury, suffering from delayed response, need for further analysis and consultation, and the patient's awareness of the extent of injury or nature of the condition.*

"The mere fact that an unexpected or bad result followed the treatment which the physician administered, does not in and of itself require you to find that the physician failed in the duty he owed to his patient, which duty I have defined for you.

"If the physician exercised the degree of care and skill the law requires of him, he can not be found to have failed in his duty simply on the basis of the results that follow." (Emphasis added.)

■ The paragraph emphasized above avoided any erroneous instruction that Dr. Yoon had an absolute duty to communicate his findings in any particular form

to anyone as a matter of law, was tailored to the facts of the case, and was taken verbatim from Fowerbaugh's proposed instruction. Instead of instructing the jury that a consulting physician always has a duty to communicate, the trial court added this limiting clause: "when a physician has a duty to communicate a diagnosis." This clause appropriately permitted the jury to find whether such a duty arose under the facts of the case to each potential recipient and to apply the correct principle of law if it found that Dr. Yoon had such a duty to communicate his findings orally.

Fowerbaugh did not suggest any refinements to his proposed instructions to satisfy these concerns. Under the circumstances, the trial court adequately instructed the jury concerning the scope of Dr. Yoon's duty. Its instructions sufficiently covered the substance of the matters requested in Fowerbaugh's proposed instruction in a balanced manner without unduly emphasizing the respective claims of either side in the litigation. *Cleveland Elec. Illum. Co. v. Astorhurst Land Co., supra.*

Accordingly, Fowerbaugh's sole assignment of error is overruled.

*Judgment affirmed.*

JAMES D. SWEENEY, P.J., and PORTER, J., concur.