This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Defendant-Appellant, Richard Levkulich (hereinafter "Levkulich"), appeals his conviction for driving under the influence of alcohol (hereinafter "DUI") in the Northwest Area County Court, Columbiana County, Ohio. Levkulich challenges the trial court's decision based upon claims of: 1) evidence improperly collected during his arrest; 2) improper admission of evidence during trial; and, 3) the conviction was against the manifest weight of the evidence. For the following reasons, we affirm the decision of the trial court.
On December 10, 1999, Levkulich was driving his car with Richard Holbrook (hereinafter "Holbrook") as his passenger. He claims to have driven his car eastward on Pine Lake Road for approximately one mile before turning around in a church parking lot prior to reaching Ellsworth Avenue, which is also known as State Route 45. Levkulich noticed a police car's flashing lights as he departed the church parking lot, so he pulled over.
Levkulich was stopped by Perry Township Police Officer Donald Paulin (hereinafter "Officer Paulin"). Officer Paulin first observed Levkulich stopped at the intersection in the northbound lane of Ellsworth Avenue. As Officer Paulin followed Levkulich, he saw Levkulich's car first swerve left of the centerline and then later swerve into the berm area to the right of the road. As Levkulich proceeded north on Ellsworth Avenue, two vehicles in the southbound lane flashed their high-beam lights at him. Officer Paulin concluded Levkulich was driving using the high-beam headlights and other cars were flashing their headlights in an effort to get Levkulich to dim his headlights.
While still heading north on Ellsworth Avenue, Officer Paulin activated his police cruiser's flashing lights to effectuate a traffic stop of Levkulich on the north side of Pine Lake Road at approximately 12:10 a.m. Levkulich turned left onto Pine Lake Road, and shortly thereafter pulled over to the right shoulder of the road and stopped. Pine Lake Road constitutes the border between Mahoning and Columbiana Counties. The exact location of the stop was on the north side of the road, in Mahoning County, which is outside of Officer Paulin's Perry Township jurisdiction. Upon walking toward Levkulich's stopped car, Officer Paulin smelled alcohol and noticed Levkulich appeared to have glassy eyes.
As Officer Paulin spoke with Levkulich, he noticed Levkulich was slurring his speech. At one point, Officer Paulin stated Levkulich admitted he had recently left the nearby Eagles Club and had consumed "a couple of beers" during the course of the evening. At trial Levkulich denied having made these statements. Officer Paulin testified Levkulich exited the vehicle and put his hands on the car in an apparent effort to steady himself. Officer Paulin then administered the horizontal gaze nystagmus test (hereinafter "HGN") to Levkulich's right eye because Levkulich claimed to be blind in his left eye. Officer Paulin attempted to perform two other routine field sobriety tests, but Levkulich indicated he could not perform the "walk and turn test" because of a back injury. Although Levkulich suggested that he could perform the "stand on one leg" test, he subsequently refused to perform this test.
Officer Paulin arrested Levkulich for DUI and took him to the police station where he twice attempted to administer a breath test. After Levkulich failed to provide an adequate breath sample during each attempt, Officer Paulin recorded Levkulich's failures as a refusal to take the test. Officer Paulin cited Levkulich for: 1) DUI in violation of R.C. 4511.19(A)(1); 2) failure to operate within marked lanes of the road in violation of R.C. 4511.33; and, 3) failure to dim his high-beam headlights in the face of oncoming traffic in violation of R.C. 4513.15(A).
At trial, the jury found Levkulich guilty of DUI and on December 6, 2000, the court entered judgment upon the verdict. The court also found Levkulich guilty of the lesser traffic offenses in violation of R.C.4511.33 and R.C. 4513.15. On January 22, 2001 the trial court imposed a $1,000 fine plus costs for violation of R.C. 4511.19(A)(1); a $25 fine for violation of R.C. 4511.33; a $25 fine for violation of R.C. 4513.15; 180 days in jail with 120 days suspended; a five-year license suspension with credit given for pre-trial suspension; unsupervised probation for three years, during which time he was not allowed to consume any alcohol; eighty hours of community service; Family Recovery Counseling; and forfeiture of Levkulich's vehicle to the Perry Township Police.
Levkulich's first assignment of error alleges:
 "The Trial Court erred to the substantial prejudice of the Appellant when it improperly permitted the State of Ohio to inquire beyond the scope of redirect examination of the witness."
At trial, the State called Officer Paulin as its first witness. On direct examination, Officer Paulin testified as to Levkulich's behavior during the stop. During cross-examination of Officer Paulin, Levuklich's counsel, noting it had been almost a year since the date of Levkulich's arrest, broached the issue as to whether Officer Paulin had recently reviewed his police reports or other records including a videotape before testifying at trial. The officer indicated he had. On redirect examination, the State discussed the actual videotape of Levkulich's arrest on December 10, 1999 which came from Officer Paulin's police cruiser. Counsel for Levkulich then subjected Officer Paulin to recross examination.
Levkulich made no pre-trial motions to exclude the videotape from evidence. At trial, Levkulich objected to the introduction of the tape on three grounds: (1) the evidence was not introduced on direct and Levkulich did not sufficiently inquire into the matter so as to "open the door" for the introduction of the evidence; (2) the tape contained prejudicial statements made by Levkulich about previous DUI convictions; and, (3) Officer Paulin's microphone was not operating properly during the initial portion of the tape, and therefore not an accurate reflection of the events that actually transpired. Over Levkulich's objections, the trial court admitted the tape into evidence reasoning introduction of the evidence during redirect examination was procedurally acceptable because it was still part of the State's case-in-chief.
On appeal, Levkulich argues the trial court abused its discretion by expanding the scope of redirect examination to the prejudice of Levkulich because his counsel did not sufficiently "inquire into" the police videotape during the cross-examination of Officer Paulin. Specifically, Levkulich relies upon a general rule that the scope of redirect examination should be limited to matters inquired into by the adverse party on cross-examination. Holtz v. Dick (1884), 42 Ohio St. 23, paragraph seven of the syllabus; Micham v. Micham (Sept. 30, 1998), 6th Dist. No. L-97-1308. Levkulich also asserts the tape's content was prejudicial.
Absent an abuse of discretion, a trial court's admission or exclusion of relevant evidence will not be disturbed on appeal. State v.Aeschbacher (Apr. 25, 1996), 7th Dist. No. 93 C.A. 37, citing State v.Sage (1987), 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus. In particular, the "control of redirect examination is committed to the discretion of the trial judge and a reversal upon that ground can be predicated upon nothing less than a clear abuse thereof."State v. Wilson (1972), 30 Ohio St.2d 199, 204, 59 O.O.2d 220,283 N.E.2d 632. The term "abuse of discretion" means an unreasonable, arbitrary, or unconscionable decision. State ex rel. Stevens v. GeaugaCty. Bd. of Elections, 90 Ohio St.3d 223, 226, 2000-Ohio-0066,736 N.E.2d 882. This court has held R.C. 2315.01(D), permits the admission of new evidence on redirect examination at the discretion of the trial judge. State v. Glaven (Mar. 1, 1977), 7th Dist. No. 1115. The issue in the instant case is therefore whether the trial court's admission of videotape evidence during redirect examination amounted to an abuse of discretion. It does not.
The facts in State v. Zimmerman (Sept. 1, 2000), 6th Dist. No. L-98-1246, are similar to the instant appeal in that the State introduced evidence during redirect examination. In Zimmerman, a coroner testified during direct examination as to the results of an autopsy she performed. Id. On redirect examination, the prosecutor showed the coroner photographs from the victim's autopsy and asked her to explain to the jury what the photographs depicted. Id. Defendant's counsel did not object to this line of questioning, and counsel likewise did not object when the photographs were offered into evidence. The Sixth District reasoned:
"* * * on direct examination, the coroner gave a detailed narrative of the injuries. On cross-examination, she was questioned as to whether certain injuries might have been fatal. On redirect, she explained the photographs of the injuries. Given this sequence of events, we cannot say that the trial court abused its discretion in allowing Dr. Beisser to testify as she did on redirect examination. We therefore conclude that the trial court did not err, let alone commit plain error." Id. at 3.
In reviewing the trial court's decision here, we must ensure the admission of evidence during redirect examination did not create an issue of unfairness to Levkulich. State v. Thompson (May 15, 1995), 12th Dist. No. CA 94-07-147. In Thompson, the appellate court concluded:
"Appellant has not demonstrated that he was in any way prejudiced by the prosecutor's decision to wait until redirect examination to ask [questions]. This is especially true in light of the fact that the trial court afforded defense counsel ample opportunity to recross-examine Dye after the prosecutor had concluded his redirect. Accordingly, we find no abuse of discretion by the trial court in permitting the prosecutor to question Dye beyond the ordinary scope of redirect examination." Id. at 3.
As in Thompson, the admission of the videotape during redirect examination in the instant case did not create unfairness. Counsel for Levkulich conducted a recross-examination of Officer Paulin subsequent to the admission of the videotape. Further, nothing in the record indicates Levkulich was unfairly surprised by the introduction of the videotape. Levkulich viewed the videotape before trial, so he knew of its contents. And the State discussed the existence of the videotape during its opening statements in the presence of both the court and the jury, which should have put Levkulich on notice that the tape might be entered during the trial.
Levkulich has argued his trial counsel did not sufficiently inquire into the police videotape so as to justify the trial court's admission of the tape into evidence. What this argument ignores, however, is the police cruiser videotape was admissible evidence. See State v. Zawacki
(July 11, 1997), 2nd Dist. No. 16177, (holding police cruisers are equipped with videotape cameras in order to make a record of events for any later prosecution). The State was free, at the discretion of the trial court, to admit the videotape without first needing Levkulich to "inquire into" the matter or "open the door." See State v. DeLeon (May 25, 2001), 2nd Dist. No. 18114, citing United States v. Segines (C.A.6, 1994), 17 F.3d 847, 856. (the "open the door" theory is relevant only when challenging otherwise prejudicial or inadmissable evidence). Our inquiry therefore leads us to examine whether the videotape was prejudicial.
In the instant case, the evidence on the tape is probative of several material factual matters including the accuracy and credibility of Officer Paulin's testimony, Levkulich's condition at the time of his arrest, and the standard used by Officer Paulin when conducting the field sobriety tests. The taped testimony of Holbrook is relevant to Levkulich's claims as to what he did on the evening of December 9, 1999. Further, the admission of the videotape was not prejudicial. The record reveals the trial court took precautions to ensure potentially prejudicial information such as Levkulich's previous DUI convictions were edited out of the sections of the videotape actually shown to the jury. The probative value of the videotape from Officer Paulin's vehicle was not outweighed by prejudice. Levkulich has not shown an abuse of discretion by the trial court. His first assignment of error is meritless.
Levkulich's second assignment of error alleges:
 "The trial court erred in permitting the introduction into evidence information gathered at the time Appellant was seized as it was outside the jurisdiction of the arresting officer."
With the exception of the videotape evidence previously discussed in relation to Levkulich's first assignment of error, Levkulich's attorney did not object to Officer Paulin's testimony or the State's related exhibits before or during trial. Crim.R. 12(B)(1)(3) makes it incumbent upon a defendant who wishes the suppression of evidence that was illegally obtained to move to suppress the evidence and to state the grounds of the illegality. Cleveland v. Becvar (1989), 63 Ohio App.3d 163, 166-67,578 N.E.2d 489, 491 citing State v. James (1980), 68 Ohio App.2d 227, 22 O.O.3d 351, 428 N.E.2d 876 and Xenia v. Wallace (1988), 37 Ohio St.3d 216,217, 524 N.E.2d 889.
Absent a pre-trial motion to suppress, objections to evidence may be completely waived. State v. Savage (1980), 1 Ohio App.3d 13, 15, 1 OBR 15, 437 N.E.2d 1202, citing Crim.R. 12(B)(3) and (G). In State v. Moody
(1978), 55 Ohio St.2d 64, 65, 9 O.O.3d 71, 377 N.E.2d 1008, an appellant who failed to object to the admission of particular evidence before trial was held to have waived related assignments of error on appeal. Id. at 66. The Moody court relied upon Crim.R. 12(C), which provides in pertinent part:
"Prior to trial, any party may raise by motion any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue. The following must be raised before trial: * * * "(3) Motions to suppress evidence, including but not limited to statements and identification testimony, on the ground that it was illegally obtained." Id.
The Moody court also relied in part upon Crim.R. 12(H), which provides:
"Failure by the defendant to raise defenses or objections or to make requests that must be made prior to trial * * * shall constitute waiver of the defenses or objections, but the court for good cause shown may grant relief from the waiver." Id.
By failing to timely object to evidence before trial, Levkulich waived arguments regarding these matters on appeal. State v. Craft (1977),52 Ohio App.2d 1, 4-5, 6 O.O.3d 1, 367 N.E.2d 1221 (holding failure to file pretrial motions made mandatory by Crim.R. 12(B) constitutes waiver by inaction on the part of the party later alleging error). There is no record of Levkulich filing a motion to suppress before trial as required by Crim.R. 12. Because Levkulich has waived this argument, we may review it only for plain error.
Evid.R. 103 controls rulings on evidence, and states in pertinent part:
"(A) Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
"(1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context;" * * * "(D) Plain Error. Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court." Id.
The Ohio Supreme Court has held "[p]lain error does not exist unless, but for the error, the outcome at trial would have been different." Statev. Joseph, 73 Ohio St.3d 450, 455, 1995-Ohio-0288, 653 N.E.2d 285. Three reasons support the conclusion the trial court here did not err, let alone create plain error. First, the "hot pursuit" doctrine covered Officer Paulin's arrest of Levkulich. Second, R.C. 2935.03(E) permitted Officer Paulin to make an arrest on the border of his jurisdiction. Third, the evidence was admissible because it was not obtained in violation of the Constitution.
Review of "hot pursuit" begins with an understanding of the "exclusionary rule," which prohibits law enforcement from using evidence gained during unlawful searches and seizures at trial. See Mapp v. Ohio
(1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081; State v. Jones,88 Ohio St.3d 430, 435, 2000-Ohio-0374, 727 N.E.2d 886. In order for a traffic stop to be lawful, the officer must merely have a reasonablesuspicion based upon specific and articulable facts that a traffic law was violated. State v. Carter (June 14, 2000), 7th Dist. No. 99 BA 7. An officer's observation of a traffic violation creates reasonable suspicion. State v. Lazenby, 7th Dist. No. 2000CO68, 2002-Ohio-1569, citing Whren v. United States (1996), 517 U.S. 806, 116 S.Ct. 1769,135 L.Ed.2d 89; State v. Wilhelm, 81 Ohio St.3d 444, 1998-Ohio-0613, 692 N.E.2d 1091; Dayton v. Erickson, 76 Ohio St.3d 3, 7, 1996-Ohio-0431,665 N.E.2d 1091.
Levkulich seeks to invoke the exclusionary rule because his arrest occurred outside of Officer Paulin's jurisdiction. However, the mere fact Levkulich's arrest was extraterritorial does not trigger the exclusionary rule for three reasons.
Officer Paulin conducted "hot pursuit", which permits an officer to lawfully arrest without a warrant and to conduct pursuit outside the jurisdiction if certain conditions are met. Hot pursuit has been codified in R.C. 2935.03(D), which provides:
"If [a peace officer] has arrest authority [* * *] within the limits of the political subdivision, the peace officer, outside the limits of that territory, may pursue, arrest, and detain that person until a warrant can be obtained if all of the following apply:
The pursuit takes place without unreasonable delay after the offense is committed;
"(2) The pursuit is initiated within the limits of the political subdivision, metropolitan housing authority housing project, regional transit authority facilities or those areas of a municipal corporation that have been agreed to by a regional transit authority and a municipal corporation located within its territorial jurisdiction, port authority, college, or university in which the peace officer is appointed, employed, or elected or within the limits of the territorial jurisdiction of the peace officer;
"(3) The offense involved is a felony, a misdemeanor of the first degree or a substantially equivalent municipal ordinance, a misdemeanor of the second degree or a substantially equivalent municipal ordinance, or any offense for which points are chargeable pursuant to division (G) of section 4507.021 [4507.02.1] of the Revised Code." R.C. 2935.03(D).
In the instant case, Officer Paulin began to pursue Levkulich as soon as he saw him swerving out of his lane and driving with his bright headlights on. He initiated the pursuit within the limits of his jurisdiction. Finally, Levkulich's lane offense, a violation of R.C.4511.33, was a moving violation to which points were chargeable pursuant to R.C. 4507.021(G)(16). Because these facts meet the requirements of R.C. 2935.03(D), Office Paulin had the authority to pursue, arrest, and detain Levkulich even though the arrest took place outside of Office Paulin's jurisdiction. See State v. Weidman, 94 Ohio St.3d 501,2002-Ohio-1484, 764 N.E.2d 997, syllabus.
While conducting the traffic stop Officer Paulin observed evidence that Levkulich was under the influence of alcohol. The exclusionary rule will not be applied to the testimony of an arresting police officer regarding the actions of a misdemeanant observed as a result of an extraterritorial warrantless arrest if the arrest is based on probable cause that a crime was committed within the officer's jurisdiction, and if the officer was in hot pursuit of the misdemeanant. Kettering v. Hollen (1980),64 Ohio St.2d 232, 18 O.O.3d 435, 416 N.E.2d 598, syllabus.
The trial court's admission of evidence in this case is also allowable pursuant to R.C. 2935.03(E)(2), which provides a township officer may arrest and detain an individual found violating various code sections, including DUI, on a roadway immediately adjacent to the boundaries of that officer's jurisdiction. Id. Presuming the facts as alleged by Levkulich, that Officer Paulin only observed and pursued them on Pine Lake Road, which is the border between Columbiana County and neighboring Mahoning County, Officer Paulin's actions remain lawful as R.C.2935.03(E)(2) granted authority for Officer Paulin to arrest Levkulich for DUI. The Court held in State v. Coppock (1995), 103 Ohio App.3d 405,659 N.E.2d 837:
"* * * A police officer * * * appointed, elected, or employed by a municipal corporation may arrest and detain, until a warrant can be obtained, any person found violating [Chapter 4511.] of the Revised Code * * * on the portion of any street or highway that is located immediatelyadjacent to the boundaries of the municipal corporation in which thepolice officer * * * is appointed, elected, or employed." Id. at 410, (Emphasis in original); see also City of Cleveland v. Carrie (Sept. 19, 1996), 8th Dist. No. 69054.
Because Officer Paulin observed a misdemeanor violation which occurred within his jurisdiction or at least on that portion of road contiguous tohis jurisdiction, and initiated pursuit from within his jurisdiction orwhere the adjoining jurisdictions are contiguous, the arrest was lawful. R.C. 2935.03(E)(2), Coppock, supra.
Lastly, even if hot pursuit and R.C. 2935.03(E)(2) were inapplicable, the third reason supporting the trial court's decision is the evidence is admissible as it was not obtained as the result of a constitutional violation. See State v. Ruff, 7th Dist. No. 01 BA 31, 2002-Ohio-2999, citing Weideman (holding an extraterritorial arrest is not a constitutional violation); State v. Filler (1995), 106 Ohio App.3d 731,735, 667 N.E.2d 54 (holding although the R.C. 2935.03(D) exception to the exclusionary rule did not apply to the officer's traffic stop outside his jurisdiction, the evidence obtained at the time of the stop was still admissible). Levkulich's second assignment of error is meritless.
Levkulich's third assignment of error alleges:
 "The trial court erred by allowing the introduction of field sobriety tests that were administered out of the jurisdiction of the arresting officer and not in strict compliance with standardized procedures and could not serve as evidence of probable cause to arrest Appellant for DUI."
Levkulich failed to object to the admission of evidence from the field sobriety tests in the proceedings below. To the contrary, the field sobriety test results were discussed during direct examination, Levkulich's attorney discussed the procedure used by Officer Paulin to conduct the field sobriety test during cross-examination, and the results were admitted into evidence without objection.
For the reasons stated at the outset of the discussion of assignment of error number two, Levkulich waived his right to make arguments regarding this assignment of error on appeal. See Becvar, supra at 166-67; Moody, supra at 65. At a minimum, by failing to object to the admission of the HGN test results into evidence at trial, Levkulich has waived all but plain error. Evid.R. 103. In reviewing for plain error, this court must determine whether the trial court's admission of the field sobriety test results changed the outcome of the trial. Joseph at 455. We conclude it did not.
Levkulich's assignment of error reads as a twofold challenge to: (1) the usage of field sobriety tests to find probable cause for his arrest and (2) the admission of the field sobriety test results into the evidentiary record supporting his conviction for DUI. Before proceeding to discuss the merits of Levkulich's arguments for striking the field sobriety test results, it is important to clarify that even if Levkulich succeeded in removing the field sobriety tests from evidence, it would not disturb Officer Paulin's finding of probable cause to arrest him or the jury's finding of sufficient evidence to convict him at trial.
The Ohio Supreme Court has ruled probable cause exists to arrest a person for DUI when "at the moment of the arrest, the police ha[ve] sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence." State v. Homan (2000)89 Ohio St.3d 421, 427, 2002-Ohio-0212, 732 N.E.2d 952, citing Beck v.Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142; Statev. Timson (1974), 38 Ohio St.2d 122, 127, 67 O.O.2d 140, 311 N.E.2d 16.
The Homan Court held the totality of the facts and circumstances surrounding an incident can support a finding of probable cause to arrest even when there are no field sobriety tests administered, or when the test results must be excluded because of lack of strict compliance with the prescribed testing procedure. Homan at 427. In a case where the defendant had been arrested for DUI, this court similarly held a trial court may rely upon an officer's observations other than field sobriety test results to serve as evidence for a DUI conviction. State v.Bunkley, 7th Dist. No. 00 CA 224, 2002-Ohio-1162, citing Homan at 424.
In the instant case, Officer Paulin testified to relevant facts and circumstances which are analogous to the officers' testimony in Homan andBunkley. For instance, Officer Paulin specifically observed Levkulich's odor of alcohol, slurred speech, bloodshot eyes, and Levkulich staggering while walking. See State v. Evans (1998), 127 Ohio App.3d 56, 62,711 N.E.2d 761 (discussing common observations used to show that a suspect was under the influence of alcohol); State v. Blackburn (1996),115 Ohio App.3d 678, 681, 685 N.E.2d 1327. Looking at the totality of the circumstances, sufficient indicators were observed by Officer Paulin to justify the arrest, even without consideration of the field sobriety test results. Levkulich's third assignment of error is meritless.
Levkulich's fourth assignment of error alleges:
 "The trial court erred by finding Appellant guilty manifestly contrary to the weight of the evidence."
Levkulich asserts evidence at trial could have supported acquittal and the jury's conclusion was against the manifest weight of the evidence. We have previously held:
"The standard of review where a trial court's decision is challenged as being against the manifest weight of the evidence is set forth in Statev. Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. An appellate court in essence sits as a `thirteenth juror' and determines whether, considering all the evidence admitted at trial, the state has met its burden of persuasion and the conclusion reached by the trier of fact is supported by the "* * * inclination of the greater amount of credible evidence * * *". Thompkins, supra at 387. A judgment of the trial court will be reversed as against the manifest weight of the evidence only where it appears the trier of fact clearly lost its way, in order to correct a `manifest miscarriage [*11] of justice'. Thompkins, Id. Because reversals based upon the manifest weight are for exceptional circumstances, as the Supreme Court noted in Thompkins, Section 3(B)(3), Article IV of the Ohio Constitution mandates the unanimous concurrence of all three judges on the reviewing panel. Id. at 2." State v. Barnes, 7th Dist. Nos. 00 BA 38, 00 BA 39, 2002-Ohio-1157 citing State v. Kerry, 7th Dist. No. 00 BA 20, 2001-Ohio-3324.
At trial in the instant case, each juror observed the testimony of Officer Paulin and the videotape from his police cruiser, which support the determination that Levkulich was under the influence of alcohol while driving. Sitting as the trier of fact, the jury also heard the testimony offered by Levkulich and his witnesses. The jury was free to weigh the evidence and the credibility of those offering it. Sitting as a proverbial thirteenth juror evaluating the weight and credibility of the evidence, this court's role is not to resolve conflicting testimony any differently than the jury at trial. Rather, we are to determine whether, based upon the greater weight of the evidence the jury clearly lost its way. A complete review of the record reveals it is abundantly clear Levkulich's conviction was not against the manifest weight of the evidence. Levkulich's fourth assignment of error is meritless.
For the reasons contained herein, the decision of the trial court is affirmed.
Donofrio, J., concurs.
Waite, J., concurs.