**The STATE of Ohio [City of Miamisburg], Appellant,**

**v.**

**COPPOCK, Appellee.**

[Cite as *State v. Coppock* (1995), 103 Ohio App.3d 405.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 14991.

Decided May 5, 1995.

Ronald L. Fobes, Miamisburg Prosecuting Attorney, for appellant.

Ronald W. Ruppert, for appellee.

BROGAN, Judge.

The state of Ohio appeals from the judgment of the Miamisburg Municipal Court, in which the court dismissed charges of driving under the influence of

alcohol and failing to drive within marked lanes of traffic, violations of Miamisburg Ordinances 333.01(a)(3) [1] and 331.08, respectively, filed against Kelly V. Coppock, appellee herein. The court sustained Coppock's motion to suppress evidence or dismiss the charges, finding that the Miamisburg police officer who arrested her lacked the authority to effect the arrest.

On October 7, 1994, at approximately 3:20 a.m., Miamisburg Police Officers Timothy Hunsaker and Charles Flickinger were proceeding eastbound on State Route 725 in the vicinity of Interstate 75. As they crossed over the interstate, they noticed the appellee seated behind the wheel of her car, stopped at a red light on the northbound exit ramp from the interstate to Route 725. Officer Hunsaker testified that the car was stopped in the middle lane on the ramp, which is marked for left turns and through traffic only. He related that the appellee was seated with her head tilted back against the headrest, with her eyes toward the roof of the automobile. Officer Hunsaker, who was driving the police cruiser, pulled off to the side of the road to watch for Coppock, "[t]o make sure she was okay for her own well being."

After the light changed to green, and following a bit of a delay, Coppock turned right onto Route 725. The officers began to follow her. Officer Hunsaker stated that she began to travel in the extreme left lane of traffic, but, shortly before reaching the intersection of State Route 741, "crossed two lanes of eastbound traffic without signaling to get into the right-hand turn lane" to turn onto southbound Route 741. When defense counsel inquired as to why the officer did not then stop the appellee, he testified:

"A. At that point I was going to observe[ ] further her driving to make sure she was not intoxicated.

"[RONALD RUPPERT, defense counsel]. Is part of the reason that you were going to continue to follow her because in the ordinary course of driving people do * * * things which might cross two lanes of travel?

"A. That would be an oversight if she was not familiar with the area.

"Q. Because someone does that it's not indicative of driving under the influence necessarily?

"A. No it's not."

After Coppock turned south onto Route 741, she began to travel in the leftmost southbound lane into Miami Township. Hunsaker stated that twice he saw her car weave across the lane dividing lines: once, south of Corporate Exchange Drive, near Shoney's restaurant, and again near the intersection of Lyons Road.

---

1. Except for the location of vehicle operation, the wording of the ordinance is identical to that of R.C. 4511.19(A)(3).

He also observed her car stray across the center line south of Lyons Road. At that time, he activated his overhead lights. Officer Hunsaker testified that Coppock then drove in a median left turn lane for approximately a quarter mile, until she turned into an apartment complex and stopped.

Officer Hunsaker stated on cross-examination that he did not decide to stop the appellee until she was south of Corporate Exchange Drive:

"Q. Officer, you've already testified that at the time she crossed the lanes of travel on 725 and the time she turned on 741 you did not make a decision to stop her. Why did you not stop her after she crossed the center line near Shoney's?

" * * *

"A. I was still going to stay behind her and get a driving pattern on her, thinking maybe that it was something that she may have lost inattentively, but as she continued to drive it became apparent that wasn't the case.

"Q. So even at the time she crossed or went over the center line at Shoney's, you had not made a decision to stop her. Correct?

"A. At that time I was just observing her, yes."

Officer Flickinger testified that they were pursuing the appellee from the time they saw her make the lane change on Route 725, but he admitted that Officer Hunsaker had the responsibility to decide whether to stop Coppock, that she was not stopped for that lane change, and that he agreed with Officer Hunsaker's decision not to pull her over for the lane change.

The city of Miamisburg's boundary with that of Miami Township is contiguous in various areas, but the evidence was uncontroverted that, south of Route 725, the boundaries remain contiguous along the western edge of Route 741 only until Corporate Exchange Drive, about an eighth of a mile south of the intersection of the two highways. South of Corporate Exchange Drive, the jurisdiction is solely Miami Township. Officer Hunsaker testified that he was aware of the jurisdictional geography:

"Q. So from the I–75 exit ramp until you get to 741, that's within Miamisburg. Correct?

"A. That's correct.

"Q. Okay, and then Miamisburg runs [south] along the * * * west side of 741 until approximately Corporate Exchange Drive. Correct?

"A. That's correct.

"Q. And 741 south of Corporate Exchange Drive is actually in Miami Township. Correct?

"A. That's correct.

"Q.  * * * The first time you saw her cross the [lane divider] was in Miami Township.  Correct?

"A.  That's correct.

"Q.  * * * The second time you saw her cross the [lane divider] I believe you testified it was at Lyons Road?

"A.  That's correct.

"Q.  That also is in Miami Township?

"A.  Correct.

"Q.  And the third time that you testified to was at the 675 overpass. Correct?

"A.  That's correct.

"Q.  That also is within Miami Township?

"A.  That's correct."

Based on the evidence presented, the trial court "suppress[ed] the stop" and dismissed the charges.  The court found that Officer Hunsaker "did not observe any driving offenses within the territorial limits of the city of Miamisburg for which he would stop this defendant.  The stop was finally made in Miami Township which [is] immediately adjacent to the City of Miamisburg."  The court held that the officer had acted without authority to arrest under R.C. 2935.03, and further concluded that "there was no probable cause to stop and arrest this Defendant."  This timely appeal followed.

The city raises one assignment of error for our consideration:

"The trial court erred in finding that the police officers had no probable cause to stop and arrest the defendant."

In essence, the city challenges the trial court's factual determination that the arresting officer did not observe any driving offenses within his territorial jurisdiction.  The Ohio Revised Code delineates a peace officer's warrantless arrest powers in R.C. 2935.03:

"(A) A * * * municipal police officer * * * shall arrest and detain, until a warrant can be obtained, a person found violating, *within the limits of the political subdivision,* * * * a law of this state, [or] an ordinance of a municipal corporation  * * *.

" * * *

"(D) If a * * * municipal police officer * * * is authorized by division (A) * * * of this section to arrest and detain, within the limits of the political subdivision, * * * a person until a warrant can be obtained, the peace officer

may, outside the limits of the political subdivision, * * * pursue, arrest, and detain that person until a warrant can be obtained if all of the following apply:

"(1) The pursuit takes place without unreasonable delay after the offense is committed.

"(2) *The pursuit is initiated within the limits of the political subdivision* * * * *in which the peace officer is appointed, employed, or elected.*

"(3) The offense involved is a felony, a misdemeanor of the first degree or a substantially equivalent municipal ordinance, a misdemeanor of the second degree or a substantially equivalent municipal ordinance, or any offense for which points are chargeable pursuant to division (G) of section 4507.021 of the Revised Code.

"(E) In addition to the authority granted under division (A) or (B) of this section:

" * * *

"(3) A police officer * * * appointed, elected, or employed by a municipal corporation may arrest and detain, until a warrant can be obtained, any person found violating [Chapter 4511.] of the Revised Code * * * *on the portion of any street or highway that is located immediately adjacent to the boundaries of the municipal corporation in which the police officer* * * * *is appointed, elected, or employed.*" (Emphasis added.)

■ Therefore, while it is permissible for a police officer to effect a warrantless arrest outside the territorial limits of his jurisdiction, certain prerequisites must be satisfied. "The authority granted in R.C. 2935.03 to a police officer * * * does not confer authority upon a municipal police officer to arrest without a warrant outside the geographic boundaries of his municipality for traffic offenses observed by the officer to have been committed outside such municipal limits." *Cincinnati v. Alexander* (1978), 54 Ohio St.2d 248, 8 O.O.3d 224, 375 N.E.2d 1241, syllabus. Cf. *Kettering v. Hollen* (1980), 64 Ohio St.2d 232, 18 O.O.3d 435, 416 N.E.2d 598, syllabus (exclusionary rule not applicable to unauthorized extraterritorial warrantless arrest if probable cause exists of crime "committed within the officer's jurisdiction, and if the officer was in hot pursuit of the misdemeanant.").

■ We must also determine, considering R.C. 2935.03(E)(3), the geographic boundaries of the officer's jurisdiction for the purposes of probable cause and the initiation of his pursuit. We are unable to locate any judicial construction of the phrase "immediately adjacent" as used in R.C. 2935.03(E)(3). Webster's defines "adjacent" as "not distant or far off" or "having a common border." Webster's Third New International Dictionary (1981) 26. "Immediately" is defined as "in direct connection or relation." *Id.* at 1129. The meaning of contiguous is "adjacent" or "touching along boundaries[.]" *Id.* at 492. Although the statute

expands an officer's jurisdiction beyond the limits of his municipality, a plain reading of the provision, plus the use of the word "adjacent" with "immediately" as its modifier, best supports the idea that this jurisdictional overlap is effective only where the jurisdictions are contiguous.

Therefore, construing the statute and the case law, to have executed a proper arrest in this case, Officer Hunsaker must have (1) observed a misdemeanor violation which occurred within the confines of his jurisdiction or on that portion of Route 741 contiguous to the Miamisburg city limits; and (2) initiated pursuit from within his jurisdiction or where the adjoining jurisdictions are contiguous.

The trial court concluded that the officer lacked probable cause to arrest the defendant while she operated her vehicle in the city of Miamisburg. We must defer to the court's findings of fact if they are supported by some competent, credible evidence. *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410, 461 N.E.2d 1273, 1276; *Ross v. Ross* (1980), 64 Ohio St.2d 203, 204, 18 O.O.3d 414, 415, 414 N.E.2d 426, 427. In addition, we are "guided by a presumption that the findings of a trial court are correct," *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 138, 566 N.E.2d 1181, 1184, and unless the record is devoid of competent, credible evidence, we will find no abuse of discretion. Moreover, when we weigh the court's legal determinations, "we will indulge all reasonable presumptions consistent with the record in favor of [the] lower court." *Fletcher v. Fletcher* (1994), 68 Ohio St.3d 464, 468, 628 N.E.2d 1343, 1347.

We conclude that the trial court's factual and legal findings are supported by the record. Viewing the record and its reasonable presumptions in favor of the court, we find that the record supports the court's conclusion that Officer Hunsaker did not possess probable cause of a traffic violation within his jurisdiction. The officer testified that he followed Coppock initially to "make sure she was not intoxicated." Thus, the officer could not have gained probable cause for the driving under the influence offense until at least south of Corporate Exchange Drive. Also, the officer excused the appellee's change of lanes on Route 725 as a possible "oversight," and he did not act upon Coppock's improper left turn from the exit ramp. Once he had excused those actions, we do not believe that the state can now resurrect them in an attempt to show probable cause within the jurisdiction.

In addition, Officer Hunsaker testified that he did not make the decision to stop the appellee until some location south of Corporate Exchange Drive, and

prior to that point, he was "just observing her." Therefore, the officer did not commence his pursuit until he was outside his territorial jurisdictional boundaries. Although the court noted the township is "immediately adjacent" to the city, we do not believe the court meant to say that the pursuit began or the arrest was made in an area within or contiguous to the city limits. Even if we were to construe the incidents clearly within the officer's jurisdiction as providing probable cause, the record is clear that Officer Hunsaker did not act upon it and begin his pursuit until he was well within Miami Township.

The fact that Officer Hunsaker did not possess articulable suspicion of criminal conduct or probable cause to arrest the appellee while she was observed driving *in Miamisburg* is not dispositive of this appeal. If Officer Hunsaker had articulable suspicion to stop Coppock's vehicle *in Miami Township* and probable cause to arrest her, the court improperly granted the appellee's motion to suppress and improperly dismissed the charge against appellee.

In *State v. Unger* (1981), 67 Ohio St.2d 65, 21 O.O.3d 41, 423 N.E.2d 1078, the Ohio Supreme Court held that the defendant's confession need not be suppressed because he was transported from Darke County to Miami County in contravention of R.C. 2935.14. The court quoted its recent ruling of *Kettering v. Hollen, supra:*

" 'The exclusionary rule has been applied by this court to violations of a constitutional nature only. In *State v. Myers* (1971), 26 Ohio St.2d 190 [55 O.O.2d 447, 271 N.E.2d 245], this court enunciated the policy that the exclusionary rule would not be applied to statutory violations falling short of constitutional violations, absent a legislative mandate requiring the application of the exclusionary rule. In *State v. Downs* (1977), 51 Ohio St.2d 47, 63–64 [5 O.O.3d 30, 364 N.E.2d 1140], the violation of Crim.R. 41 with respect to the return of a search warrant was described as non-constitutional in magnitude and the exclusionary rule was not applied. Also, in *State v. Davis* (1978), 56 Ohio St.2d 51 [10 O.O.3d 87, 381 N.E.2d 641], it was held that fingerprint evidence obtained in violation of a statute does not have to be excluded.

" '*It is clear from these cases that the exclusionary rule will not ordinarily be applied to evidence which is the product of police conduct violative of state law but not violative of constitutional rights.*' " (Emphasis added.) *Unger*, 67 Ohio St.2d at 70, 21 O.O.3d at 44, 423 N.E.2d at 1081.

In *State v. Thompson* (1987), 33 Ohio St.3d 1, 514 N.E.2d 407, the Ohio Supreme Court held that the failure of the police to confine the defendant in the county in which he was arrested, in violation of R.C. 2967.15, did not rise to a

constitutional level and thus did not merit application of the exclusionary rule to statements given by the accused while in custody.

In *State v. Klemm* (1987), 41 Ohio App.3d 382, 536 N.E.2d 14, the Hamilton County Court of Appeals held that a violation of state law resulting from a city police officer's execution of a search warrant beyond the territorial limits of his jurisdiction did not require the suppression of evidence under the exclusionary rule when there is a demonstration of probable cause to support the issuance of the warrant. See, also, *Stow v. Riggenbach* (1994), 97 Ohio App.3d 661, 647 N.E.2d 246.

An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction. *United States v. Crews* (1980), 445 U.S. 463, 474, 100 S.Ct. 1244, 1251, 63 L.Ed.2d 537, 545; *State v. Reymann* (1989), 55 Ohio App.3d 222, 563 N.E.2d 749.

The trial court never decided whether the state had presented sufficient facts to justify the stop of Coppock's vehicle in Miami Township or whether there was probable cause to arrest her. If there was evidence present to stop her car, evidence discovered during appellee's detention was admissible to determine whether there was probable cause to arrest her for operating a motor vehicle while under the influence of alcohol.

Accordingly, the appellant's assignment of error is sustained in part and the judgment will be reversed and the cause remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

GRADY and FREDERICK N. YOUNG, JJ., concur.