I must respectfully dissent from the opinion of the majority as it relates to the constitutionality of the traffic stop and the subsequent application of the exclusionary rule.
At the outset, I note my agreement with the holding that R.C.2935.03, not R.C. 509.05, governs a township constable's statutory jurisdiction to arrest without a warrant pursuant to the analysis set forth in the majority opinion. As a result, Officer Woolf was just outside of the territorial boundaries of his statutory jurisdiction when he stopped and arrested appellant for driving while under suspension. Moreover, I agree that the hot pursuit doctrine as codified in R.C. 2935.03(D) and the exception for warrantless arrests on adjacent streets and highways under R.C.2935.03(E)(2) were not applicable for the reasons stated in the majority opinion.
I, however, part company with the majority on the paramount constitutional question presented by the instant appeal, to wit: whether the evidence obtained was automatically subject to mandatory suppression under the exclusionary rule by virtue of the fact that Officer Woolf effected the traffic stop and arrest outside the geographical limits of Russell Township in technical violation of R.C. 2935.03?
In my opinion, this evidence should not have been subjected to the exclusionary rule. In arriving at this conclusion, I rely upon Kettering v. Hollen (1980), 64 Ohio St.2d 232, and its progeny as the governing law in Ohio.
In Hollen, an officer from the Kettering Police Department stopped the defendant-motorist under the suspicion that the latter was operating a motor vehicle while under the influence of alcohol. It was uncontroverted that the stop and subsequent arrest of the defendant took place within the corporate limits of Dayton, Ohio. At a trial to the bench in Kettering Municipal Court, the defendant was convicted for failure to drive within a single lane and driving while under the influence of alcohol. The court of appeals reversed the convictions. In doing so, the appellate court held that the extraterritorial warrantless arrest of the defendant in Dayton by a Kettering police officer was illegal, thereby rendering the resulting evidence obtained during the arrest inadmissible.
On appeal, the Supreme Court of Ohio reversed the judgment of the court of appeals. In doing so, the court observed that "the exclusionary rule will not ordinarily be applied to evidence which is the product of police conduct violative of state law but not violative of constitutional rights." Hollen,64 Ohio St.2d at 235.
In other words, a warrantless arrest that is unauthorized by law does not result in an automatic application of the exclusionary rule. Instead, the relevant inquiry is "whether a constitutional violation occurred." Id. The Hollen court concluded that the police officer had probable cause to arrest the defendant after observing his erratic driving. Therefore, even though the warrantless arrest of the defendant was obviously a seizure for purposes of the Fourth Amendment, there was no constitutional violation given the probable cause to effect the seizure. Id.
As recognized by the majority, there has been a distinct conflict among Ohio appellate courts since Hollen regarding the effect of an illegal arrest on a subsequent criminal prosecution. A minority of appellate courts have held that an investigatory stop and arrest made in contravention of R.C. 2935.03 is per se
unreasonable under the Fourth Amendment, thereby mandating the automatic suppression of any evidence flowing from the stop and arrest. See, e.g., State v. Grubb (1993), 82 Ohio App.3d 187,192.
Unfortunately, these courts appear to have misconstrued Hollen
as being limited solely to instances in which the hot pursuit doctrine is applicable. See, e.g., State v. Smigelski (June 9, 1995), Lucas App. No. L-94-183, unreported, at 8-10, 1995 Ohio App. LEXIS 2434 (suggesting that the violation in Hollen occurred within the police officer's proper jurisdiction, thereby triggering the hot pursuit doctrine); Grubb, 82 Ohio App.3d at 192
(noting that Hollen "involved application of a `hot pursuit' doctrine, which is not present here").
In the case sub judice, the majority subscribes to the narrow reading of Hollen by construing its holding as simply an application of the hot pursuit doctrine. For the following reasons, I believe that this view constitutes a fundamental misinterpretation of Hollen and its progeny.
In Hollen, the Supreme Court expressly stated that the record was "insufficient as to the factual issue of whether the arresting process commenced while the arresting officer and the defendant were still in the city of Kettering." Hollen,64 Ohio St.2d at 234. Moreover, the court noted that the hot pursuit doctrine had not yet even been codified in R.C. 2935.03(D) at the time of the events in Hollen. Id. at 233, fn. 1. As a result, the court assumed arguendo that the warrantless misdemeanor arrest was unauthorized by law. Id. at 234.
After assuming that the arrest was not sanctioned by statute, the court proceeded to hold that the exclusionary rule only applies to constitutional violations, not to violations that are only statutory in nature. Thus, even after assuming that the arrest in Hollen was unauthorized under Ohio law, the court nevertheless upheld the defendant's convictions because the police officer had probable cause under the Fourth Amendment to make the seizure.
A majority of appellate courts have correctly read Hollen as holding that the exclusionary rule is inapplicable if it is ultimately established that the stop and arrest were supported by reasonable suspicion and probable cause, respectively. In this regard, several recent decisions from the Second District Court of Appeals have set out what I believe to be the fundamental edict of constitutional law pronounced by the Supreme Court of Ohio inHollen, to wit: the exclusionary rule is not applicable to evidence which is the product of police conduct that may be violative of state law, but is not violative of constitutional rights.
 In State v. Coppock (1995), 103 Ohio App.3d 405, a Miamisburg police officer drove outside the municipal limits of his jurisdiction while on routine patrol. Upon doing so, he performed a traffic stop of a vehicle in Miami Township, arrested the motorist for driving while under the influence of alcohol, and issued an additional citation for failure to drive within marked lanes. It was undisputed that the stop was predicated upon traffic offenses that occurred outside the city limits of Miamisburg; therefore, it was also uncontroverted that the officer did not commence his pursuit until he was outside the territorial boundaries of Miamisburg. The defendant filed a motion to suppress all of the evidence on the ground that the police officer lacked the statutory authority to effect the arrest. Following a suppression hearing, the trial court suppressed the evidence and dismissed the charges because the officer had not witnessed any traffic offenses within the geographical limits of the city.
On appeal, the Second District reversed the judgment of the trial court. As an initial matter, the court of appeals concluded that there was competent, credible evidence in the record to support the trial court's factual and legal findings to the extent that the officer "did not possess probable cause of a traffic violation within his jurisdiction." Coppock,103 Ohio App.3d at 411. The court, however, went on to hold:
 "The fact that Officer Hunsaker did not possess articulable suspicion of criminal conduct or probable cause to arrest the appellee while she was observed driving in Miamisburg is not dispositive of this appeal. If Officer Hunsaker had articulable suspicion to stop Coppock's vehicle in Miami Township
and probable cause to arrest her, the court improperly granted the appellee's motion to suppress and improperly dismissed the charge[s] against appellee." (Emphasis sic.)
 Id. at 412.
 In arriving at this holding, the Coppock court cited a string of cases from the Supreme Court of Ohio, including Hollen, as clearly standing for the proposition that the exclusionary rule is not applied to evidence which is the product of police conduct violative of state law, as long as the police did not violate the suspect's constitutional rights when gathering such evidence. Id. Accordingly, the Second District reversed the trial court's decision to suppress the evidence and to dismiss the charges against the defendant. It then remanded the case back to the trial court for a determination as to whether there was reasonable suspicion to perform the initial traffic stop and, subsequently, probable cause to effect the arrest. Id. at 413.
In State v. Ruble (June 26, 1998), Montgomery App. No. 16726, unreported, 1998 WL 425503, the appellant asked the Second District to revisit its decision in Coppock. The appellant argued that when a police officer violates R.C. 2935.03 in effecting an arrest outside of his or her statutory jurisdiction, it automatically amounts to an unreasonable seizure under theFourth Amendment. The Second District observed:
 "Ruble asks us to revisit our holding in Coppock, arguing that an arrest that is illegal for lack of proper authority in the arresting officer is necessarily unreasonable. We do not agree. The core value of the Fourth Amendment is the right of privacy, which suffers no detriment because proper authority of office is lacking in the agent of the state who performs a search or seizure. It is the nature of the intrusion, not the commission of the officer who performs it, which determines whether a warrantless search or seizure was reasonable for purposes of the Fourth Amendment."
(Emphasis sic. and added.) Ruble, 1998 WL 425503, at 1.
The Second District correctly followed Hollen and its progeny in reaching this conclusion. See, also,State v. Hammons (Aug. 28, 1998), Montgomery App. No. 16931, unreported, 1998 WL 543363 (wherein the Second District held that a city of Franklin police officer did not violate the Fourth Amendment by effecting a traffic stop within the city of Centerville for traffic violations that occurred outside of the officer's territorial jurisdiction). Under Hollen and subsequent cases, the Supreme Court of Ohio has clearly held that an arrest made in violation of a statute does not amount to a per se unreasonable seizure under theFourth Amendment.
Indeed, our court has itself recently recognized this basic tenet of Fourth Amendment law. In State v.Tidwell (Sept. 25, 1998), Lake App. No. 97-L-126, unreported, 1998 WL 682352, an officer from the Mentor Police Department made what was conceded to be an illegal arrest in violation of R.C. 2935.03, to wit: he arrested a suspect without a warrant for a misdemeanor which was committed outside of the officer's presence. The defendant moved to suppress certain fingerprint evidence on the ground that such evidence was obtained as a direct result of the unlawful arrest. The trial court overruled the motion. On appeal, this court affirmed the trial court's decision. Our rationale for doing so was as follows:
 "[A]n illegal arrest does not automatically result in the suppression of evidence. The rule that an officer must witness the commission of a misdemeanor before he is permitted to arrest the suspect without a warrant comes from R.C. 2935.03, and a warrantless arrest is a violation of that statute. State v. Henderson (1990), 51 Ohio St.3d 54
* * *. However, statutory violations do not give rise to suppression of evidence, unless specifically required by the legislature; only constitutional violations do. State v. French (1995), 72 Ohio St.3d 446, 449 * * * ." Tidwell, 1998 WL 682352, at 5
(Emphasis added and parallel citations omitted.)
We concluded that the suppression of the fingerprint evidence was not warranted because the police officer committed a statutory violation, rather than a constitutional violation. In doing so, this court cited State v. French, supra. In French, the Supreme Court of Ohio invoked Hollen
for the proposition that the exclusionary rule will not be applied to suppress evidence which is the product of police conduct that violates a statute, but falls short of a constitutional violation. Thus, this court's reliance on Hollen and its progeny is unmistakably evidenced by our decision in Tidwell. See, also, State v. York (1997), 122 Ohio App.3d 226, 234
(wherein this court cited Hollen and reiterated that "[v]iolations of statutory law do not implicate constitutional rights, and the exclusionary rule, which is intended to enforce constitutional rights, has no application in such a situation").
It must be emphasized that the Supreme Court of Ohio hasrepeatedly reaffirmed its holding in Hollen. See, e.g., State v. Droste (1998),83 Ohio St.3d 36, 40 ("We have stated on many occasions that absent a violation of a constitutional right, the violation of a statute does not invoke the exclusionary rule.");Hilliard v. Elfrink (1996), 77 Ohio St.3d 155, 158. In Droste, the Tenth District Court of Appeals had concluded that the trial court erred by failing to apply the exclusionary rule based on the fact that two liquor control agents exceeded the jurisdiction conferred on them by R.C. 5502.61 in stopping and arresting the defendant-motorist. In doing so, the court of appeals glossed over Hollen
by implicitly construing it as a hot pursuit case. SeeState v. Droste (Apr. 1, 1997), Franklin App. No. 96APC07-906, unreported, at 8, 1997 Ohio App. LEXIS 1290 (observing that the "mandate of Kettering [v. Hollen], requiring that an arrest be based on probable cause that a crime was committed in the officer's jurisdiction, is not present on these facts").
On appeal from that judgment, the Supreme Court agreed that the liquor control investigators violated R.C. 5502.61 and were, therefore, without statutory authority to execute the traffic stop of the defendant. Droste, 83 Ohio St.3d at 39-40. The Supreme Court, however, cited Hollen for the proposition that absent a violation of a constitutional right, the violation of a statute does not invoke the exclusionary rule. Id. at 40. The Supreme Court ultimately held that the exclusionary rule was inapplicable and reversed the judgment of the court of appeals by reinstating the defendant's convictions.
In light of Droste and what I perceive as an abundance of Supreme Court statements on the topic, I therefore dissent. I believe that Hollen stands for the principle that the violation of a statute does not trigger the exclusionary rule.[1] Instead, the exclusionary rule only requires the suppression of evidence when the police gather such evidence in violation of the suspect's constitutional rights.
An unlawful arrest is simply one carried out in violation of a statutory provision. Such an arrest is not automatically unreasonable for purposes of the Fourth Amendment. Although unlawful, the arrest may still be a reasonable seizure under the United States Constitution if there was reasonable suspicion of current or imminent criminal activity which ultimately led to probable cause to effect the arrest.
In the context of a traffic stop, the trial court must adjudge its constitutionality by determining whether there was reasonable suspicion to support the initial stop and probable cause to validate the subsequent arrest of the motorist. As recognized by the Second District in Ruble, it is "the nature of the intrusion, not the commission of the officer who performs it, which determines whether a warrantless search or seizure was reasonable for purposes of the Fourth Amendment."
In other words, the fact that the police officer may have stopped the vehicle for a violation that occurred outside of his or her statutory jurisdiction is not dispositive of the constitutional analysis required by the Fourth Amendment. Instead, the reasonable suspicion/probable cause analysis is the touchstone for determining whether a particular seizure was unreasonable under the Fourth Amendment. It is an unreasonableseizure, not an unlawful arrest, that triggers the exclusionary rule.
In the case at bar, the only witness to testify at trial was Officer Woolf. He indicated that appellant attempted to pass other vehicles while in a no-passing zone. When a police officer witnesses a motorist in transit commit a traffic violation, the officer has probable cause to stop the vehicle for the purpose of issuing a citation. State v. Carleton (Dec. 18, 1998), Geauga App. No. 97-G-2112, unreported, at 10, 1998 Ohio App. LEXIS 6163. After stopping appellant, Officer Woolf ran a check on his driver's license and discovered that he was driving while under suspension. This fact provided Officer Woolf with probable cause to arrest appellant. Based on the evidence adduced at trial, therefore, appellant's rights under the Fourth Amendment clearly were not violated.
The trial court did not err by denying the motion to dismiss the charges. Under the authority of Hollen and its progeny, I would deem the first assigned error to be without merit. After doing so, I would conclude that appellant's second assignment of error was equally lacking in merit, and I would accordingly affirm the judgment of the trial court.
Finally, in light of the importance of the constitutional question involved and the regularity with which it arises, I certainly agree that the matter should be certified for conflict to the Supreme Court of Ohio.
[1] The Hollen court, however, recognized an exception to this principle when it stated that "the exclusionary rule would not be applied to statutory violations falling short of constitutional violations, absent a legislative mandate requiringthe application of the exclusionary rule." (Emphasis added.)Hollen, 64 Ohio St.2d at 234. Thus, the General Assembly may amend R.C. 2935.03 to include an express mandate requiring the application of the exclusionary rule to cases in which a police officer effects an extraterritorial arrest for an offense that occurred outside of the officer's statutory jurisdiction.