OPINION
This is an accelerated appeal taken from a final judgment of the Ravenna Division of the Portage County Municipal Court. Appellant, Pamela L. Weideman, appeals from the denial of her motion to suppress following her conviction for driving while under the influence of alcohol.
At the hearing on the motion to suppress, the following facts were established. On May 24, 1998, while on his midnight to eight a.m. shift, Officer David S. Rarrick ("Officer Rarrick") of the city of Ravenna Police Department was called outside the city to assist another officer. On his way back into the city limits, while stopped on Hayes Road, approximately one-half of a mile outside the city of Ravenna, Officer Rarrick observed appellant traveling on South Prospect Street. Accordingly, the first time Officer Rarrick observed appellant, she was outside the city limits of Ravenna. At that time, Officer Rarrick noticed that appellant's vehicle was not in the right lane but rather in the middle of the road, well left of center. He then observed appellant return back to the driver's lane, drift off the right side of the road on two occasions, and again go left of center.
At approximately 3:32 a.m., Officer Rarrick pulled appellant over and radioed police dispatch to summons the Ohio State Highway Patrol to come to the scene because he was making a traffic stop outside the city of Ravenna. As Officer Rarrick approached appellant's vehicle, he smelled a strong odor of alcohol and observed that her eyes were bloodshot. When Officer Rarrick proceeded to perform a horizontal gaze nystagmus test, he noticed that appellant had a lack of smooth pursuit and she did have some nystagmus at maximum deviation. Thereafter, Officer Rarrick admittedly had appellant perform additional tests to make sure that he could detain her until the Ohio State Highway Patrol arrived.
During this time, Officer Rarrick did not advise appellant that she was under arrest. Instead, he informed appellant that she was being detained until the Ohio State Highway Patrol arrived. Officer Rarrick, nevertheless, collected appellant's keys, license, registration and insurance card.[1] The length of appellant's detention was between ten to fifteen minutes.
At approximately 3:47 a.m., Sergeant Donald Dunbar ("Sergeant Dunbar") of the Ohio State Highway Patrol arrived on the scene. Sergeant Dunbar observed appellant behind the wheel of her vehicle. Before approaching appellant, Sergeant Dunbar was briefed by Officer Rarrick as to his reasons for the traffic stop.[2] Upon speaking with appellant, Sergeant Dunbar testified that he detected an odor of alcohol and noticed that her speech was slurred. Appellant was then asked to exit the vehicle and perform a series of field sobriety tests. After administering these tests, Sergeant Dunbar formed the opinion that appellant was under the influence of alcohol and placed her under arrest.
Appellant was transported to the Ravenna Highway Patrol Post. Subsequently, she submitted to a Breathalyzer test, which registered a reading of 0.239 grams of alcohol per 210 liters of breath. As a result, appellant was issued a traffic citation for driving under the influence of alcohol in violation of R.C. 4511.19(A)(1) and driving with a prohibited blood-alcohol content, in violation of R.C. 4511.19(A)(3).
On June 29, 1998, appellant filed a motion to suppress with the trial court. As grounds for the motion, appellant maintained that there was no lawful reason to make a stop and detention, and there was no probable cause to arrest her without a warrant.
The trial court held a hearing on the motion on August 24, 1998 wherein appellant continued to argue that the stop and detention was illegal because Officer Rarrick was beyond the city limits when the offense and traffic stop took place, and that Sergeant Dunbar's arrest was improper because he did not observe appellant driving and did not view a criminal act. Officer Rarrick and Sergeant Dunbar were the only witnesses to testify at this proceeding. While still on the record at the suppression hearing, the trial court denied appellant's motion to suppress and made the following statement:
 "As we all know in a [m]otion to [s]uppress the standards are much less than a normal criminal hearing.
 "The officer in this case did have the right to be in the area of the stop. He noticed what could be perceived as a hazard. The State barely made that point.
"So, at this time I am going to overrule the motion."
 Thereafter, on October 1, 1998, appellant entered a no contest plea to the charge of driving under the influence in violation of R.C. 4511.19(A)(1). The trial court found appellant guilty and imposed sentence. However, the trial court stayed the execution of the sentence pending this appeal.
From this judgment, appellant filed a timely notice of appeal with this court and asserts the following assignments of error for our consideration:
 "[1.] The court erred to the prejudice of the appellant by denying the motion to suppress because appellant's stop and detention by Officer Rarrick lacked justification and was violative of her constitutional rights under the Fourth Amendment.
 "[2.] The court erred to the prejudice of the appellant by denying the motion to suppress because appellant's arrest by Sergeant Dunbar lacked probable cause and was violative of her constitutional rights under the Fourth Amendment."
 In both of her assignments of error, appellant challenges the trial court's denial of her motion to suppress. Specifically, in the first assignment of error, appellant maintains that the stop and detention by Officer Rarrick were illegal because there was no evidence that upon stopping her, Officer Rarrick began the process of obtaining her license and registration, which is a prerequisite for engaging in an investigation as to whether she was driving under the influence. In rebuttal, the state argues that during the suppression hearing, Sergeant Dunbar testified that Officer Rarrick gave him appellant's keys, license, registration, and insurance card.
Furthermore, appellant suggests that her detention by Officer Rarrick could not have been for the purpose of issuing a citation for a traffic violation because the officer was outside his jurisdiction when he made the initial stop. And, there is no evidence, according to appellant, that Officer Rarrick had a reasonable suspicion that she was driving under the influence prior to the stop.
In response, the state suggests that Officer Rarrick had an articulable suspicion to stop and detain appellant because he observed her vehicle cross the centerline twice and go off the side of the road twice. Although Officer Rarrick was admittedly outside of his jurisdiction when he observed appellant driving, the state posits that it would be unreasonable for him to allow appellant to continue to drive when he had a reasonable suspicion that she was impaired.
Before addressing the substance of appellant's arguments, we need to articulate the appropriate standard of review. At a hearing on a motion to suppress, the trial court functions as the trier of fact. As such, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses.State v. Mills (1992), 62 Ohio St.3d 357, 366; State v. Smith (1991),61 Ohio St.3d 284, 288. Upon review, the appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Retherford (1994), 93 Ohio App.3d 586, 592;State v. Carleton (Dec. 18, 1998), Geauga App. No. 97-G-2112, unreported, at 2, 1998 WL 964286. After accepting such factual findings as accurate, the reviewing court must then independently determine, as a matter of law, whether the applicable legal standard has been satisfied.Retherford at 592; State v. Lillstrung (Sept. 18, 1998), Lake App. No. 97-L-290, unreported, at 2, 1998 WL 682400.
The usual analysis of a challenge to a traffic stop takes the form of determining whether an officer had either the requisite reasonable suspicion or probable cause to stop the suspect's vehicle. Here, we never reach that issue.
In the instant case, the observed traffic offense and the stop and detention occurred outside of Officer's Rarrick's territorial jurisdiction. Those facts are fatal to the prosecution's case. R.C.2935.03 governs a police officer's jurisdiction to arrest and states in pertinent part:
 "(A)(1) A sheriff, deputy sheriff, marshal, deputy marshal, municipal police officer, township constable, police officer of a township or joint township police district * * * shall arrest and detain, until a warrant can be obtained, a person found violating, within the limits of the political subdivision * * * in which the peace officer is appointed, employed, or elected, a law of this state, an ordinance of a municipal corporation, or a resolution of a township."
 Thus, under R.C. 2935.03(A)(1), a police officer is limited to his or her territorial jurisdiction when making a warrantless arrest. State v. Wendel (Dec. 23, 1999), Geauga App. No. 97-G-2116, unreported, at 3, 1999 WL 1332193. Moreover, Ohio courts have recognized that:
 "It is well established that a * * * police officer is without authority to detain or arrest a person outside the geographic boundaries * * * by which he is employed for a traffic offense committed outside such geographic boundaries. R.C. 2935.03; State v. Coppock (1995), 103 Ohio App.3d 405, 410, * * *; State v. Grubb (1993), 82 Ohio App.3d 187, 192, * * *." (Parallel citations omitted.) Miller v. Leesburg (Dec. 1, 1998), Franklin App. Nos. 97APE10-1379 
97APE10-1380, unreported, at 10, 1998 WL 831404.
 In the present case, although Officer Rarrick had a reasonable suspicion to believe that appellant committed a traffic offense, this offense was observed and committed outside his jurisdictional limits. Furthermore, Officer Rarrick himself was outside his jurisdiction at the time of the initial stop. Hence, Officer Rarrick had no legal authority to stop and detain appellant because he had no reasonable basis to believe that appellant committed an offense within his jurisdiction.[3] As a result, the stop was unlawful, and Officer Rarrick's seizure of appellant was per se
unreasonable for purposes of the Fourth Amendment.
We applaud Officer Rarrick's efforts, in the spirit of common sense and safety, in stopping and detaining appellant until the Ohio State Highway Patrol arrived. However, the relevant legal inquiry now becomes what happens to the evidence that was accumulated as a result of the stop. Stated another way, the question presented is whether the evidence obtained by Officer Rarrick and Sergeant Dunbar against appellant is automatically subject to the exclusionary rule due to the unlawful stop.
In general, the exclusionary rule excludes evidence procured in the course of an unconstitutional stop or arrest. Stow v. Riggenbach (1994),97 Ohio App.3d 661, 663. In order to invoke the exclusionary rule, the police conduct must rise to the level of a constitutional violation.Kettering v. Hollen (1980), 64 Ohio St.2d 232, 235.
 "* * * [T]he exclusionary rule will not ordinarily be applied to evidence which is the product of police conduct violative of state law but not violative of constitutional rights." Id. at 235.
 Specifically, in Hollen, the Supreme Court of Ohio held that the exclusionary rule is not applicable where a police officer's extraterritorial warrantless arrest of a misdemeanant is based on probable cause that the crime was committed within the officer's jurisdiction, and the officer is in hot pursuit of the offender, even though such an arrest is unauthorized under state law.[4] Id. at syllabus. Since Hollen
involved the application of a hot pursuit doctrine, which is not present in this case, it will not be applied here. Wendel at 6.[5]
A similar scenario was addressed in State v. Grubb (1993),82 Ohio App.3d 187, 191-192, where Ohio State University police officers observed the defendant commit a traffic violation outside of the jurisdiction of the university police officers. The Tenth District Court of Appeals concluded that the police officers exceeded their jurisdictional bounds by stopping the defendant and arresting him beyond the limits of university property. In doing so, the court acknowledged that the university police had no reasonable basis for believing that thedefendant committed a traffic violation on university property. As a result, the court suppressed the evidence flowing from the illegal traffic stop and stated the following:
 "Accordingly, the stop for the alleged improper left turn was unlawful, and the subsequent `search' violated defendant's Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures. The exclusionary rule is applicable * * *." Grubb at 192.
 Thus, Grubb held that where an illegal act and subsequent detention occur outside the police officer's jurisdiction, the officer's actions are in violation of the Fourth and Fourteenth Amendments, thereby requiring the application of the exclusionary rule. Id. As was acknowledged by this court in Wendel, we agree with the reasoning of the Tenth District Court of Appeals in Grubb.[6]
As we noted earlier, both the offense and subsequent stop took place outside Officer Rarrick's jurisdictional limits. As a result, Officer Rarrick had no legal authority to stop and detain appellant because he had no reasonable basis to believe that she committed an offense withinhis jurisdiction. In its simplest terms, the stop in this case, just as in Grubb, was unlawful and constituted a per se unreasonable seizure of appellant under the Fourth Amendment. Hence, any evidence flowing from the stop should be suppressed pursuant to the exclusionary rule since the initial stop violated appellant's right to be free from unreasonable search and seizures under the Fourth Amendment. See Wong Sun v. UnitedStates (1963), 371 U.S. 471, 488. Therefore, all the evidence accumulated against appellant as a result of the illegal stop should have been excluded by the trial court.[7]
While we believe this to be an unhappy result, we are in accord that it is the result demanded from the present state of the law. Appellant's first assignment of error is reluctantly sustained.
We note that our decision in Wendel supports the holding in this case. There, the exclusionary rule was applied when a police officer conducted an extraterritorial stop and arrest in violation of R.C. 2935.03. Our rationale for doing so was as follows:
 "Officer * * * was outside of the geographic boundaries * * * at all relevant times. A township police officer cannot unilaterally expand his own jurisdiction. As a result, the seizure of appellant was per se unreasonable as a violation of the Fourth Amendment. Hence, the constitutional violation triggered an automatic application of the exclusionary rule. Thus, all evidence gathered against appellant as a result of the illegal stop should have been excluded by the trial court. * * *" (Emphasis added.) Wendel at 6.
 In arriving at this conclusion, we emphasize that there has been a conflict among the various appellate districts in Ohio regarding the effect an unlawful stop has on a subsequent criminal prosecution. In particular, this court's decisions in this matter, while in accordance with the position of the Tenth District Court of Appeals taken in Grubb, is in direct conflict with decisions rendered by the Ninth District in State v. Filler (1995), 106 Ohio App.3d 731; the Sixth District in State v. Tennison (Apr. 14, 1989), Wood App. No. WD-88-41, unreported, 1989 WL 35534; the Fourth District in State v. Brown (Apr. 16, 1999), Pickaway App. No. 98CA27, unreported, 1999 Ohio App. LEXIS 1983; and the Second District in State v. Hammons (Aug. 28, 1998), Montgomery App. No. 16931, unreported, 1998 WL 543363.
Based upon the foregoing conflict, we certify the following issue for review by the Supreme Court of Ohio:
 "Whether a stop and detention of a motorist by a police officer, who is beyond his or her jurisdictional limits, for an offense observed and committed outside the officer's jurisdiction automatically constitutes a per se unreasonable seizure under the Fourth Amendment, thereby triggering the mandatory application of the exclusionary rule to suppress all evidence flowing from the stop."
 As for appellant's second assignment of error, it is moot in light of our decision in the first assignment.
Based on the foregoing analysis, the judgment of the trial court is reversed, and this cause is remanded to the trial court for further proceedings consistent with this opinion.
 ______________________________________ PRESIDING JUDGE JUDITH A. CHRISTLEY
NADER, J., concurs with Concurring Opinion, O'NEILL, J., concurs.
[1] These items were then given to Sergeant Dunbar after he arrived on the scene.
[2] At the suppression hearing, when Sergeant Dunbar attempted to explain what Officer Rarrick said to him, counsel for appellant objected, and the trial court sustained the objection.
[3] It may also be argued that Officer Rarrick arrested appellant when he took control of her keys.
[4] Hollen was decided prior to the adoption of R.C. 2935.03(D) in 1981 which authorizes extraterritorial arrests of misdemeanants by a police officer in hot pursuit.
[5] This court has limited the holding of Hollen to instances where the hot pursuit doctrine is applicable. Wendel at 6 (noting that Hollen
"involved application of the hot pursuit doctrine which * * * was not present in this case.").
[6] Although this writer dissented from the majority opinion in Wendel, this court is bound by and will adhere to the precedent established by that case.
[7] The issue of whether a traffic stop made by a police officer outside his or her jurisdiction requires the suppression of all the evidence obtained as a result of the stop was previously addressed by this court in State v. Pruey (Feb. 6, 1987), Lake App. No. 11-246, unreported, 1987 WL 6236. There, the police officer made an extraterritorial stop of a drunk driver and detained the driver until the Ohio State Highway Patrol arrived to arrest the driver. In holding that the police officer had the right to stop the driver outside his jurisdiction, this court stated:
 "The public policy of this state suggests that when a law enforcement officer sees a clear violation of law — albeit a misdemeanor offense — the officer ought to do what is reasonable, under the circumstances, to prevent the public from being injured. An officer should not be placed in the position where he or she must view drivers who are endangering the lives of others, without having the authority to stop the drivers and their conduct." (Emphasis in the original.) Pruey at 3.
However, the holding in Pruey was criticized in a subsequent case from this district because it was decided by three visiting judges sitting by assignment. State v. Pelsue (May 23, 1997), Portage App. No. 95-P-0149, unreported, at 8, 1997 WL 286174 (Ford, P.J., dissenting). Furthermore, the analysis in Grubb has been followed by this district. Wendel at 6.