OPINION
{¶ 1} Plaintiffs-Appellants Spiro and Tawnya Collias are appealing the trial court's directed verdict in favor of Defendant-Appellee Dr. Richard Bellas, M.D. and judgment in favor of Defendants-Appellees Troy Radiologists, Inc. and Dr. Diane Anderson, D.O.
 {¶ 2} The record establishes the following facts. On November 15, 1993 twenty-nine-year-old Tawnya Collias, who was then known as Tawnya Taylor, had a base-line mammogram performed by Troy Radiologists. Dr. Bellas, the principal owner and medical director of Troy Radiologists, interpreted the mammogram, finding no evidence of breast cancer. He sent those results to both Collias and her family doctor.
 {¶ 3} On November 18, 1996 Collias had a follow-up mammogram performed by Troy Radiologists and interpreted by Dr. Anderson. Although the intake sheet properly identified the patient as Tawnya Collias and stated that the facility had a baseline mammogram, the follow-up films were incorrectly labeled as belonging to Tawnya Collins. Additionally, because Dr. Anderson was unable to find the baseline films for comparison, she concluded that no prior films existed. Dr. Anderson interpreted the November 18, 1996 mammogram as negative for any indication of breast cancer.
 {¶ 4} Plaintiffs' radiology expert, Dr. Michael Foley, was of the opinion that Dr. Anderson breached the standard of care and negligently interpreted Collias' 1996 mammogram for two reasons. First, the unavailability of the baseline mammogram made it impossible to consider whether there had been changes in Collias' breast tissue. Second, the 1996 films showed calcifications, which could be indicative of cancer, but Dr. Anderson erroneously concluded that the calcifications were benign. In fact, Dr. Foley testified that based solely on the 1996 films, a biopsy should have been ordered.
 {¶ 5} Collias was diagnosed with breast cancer in 1997. By that time, however, the cancer had already spread to her lymph nodes. She underwent surgery that year, but the cancer reappeared in 2001. As a result Collias suffers from terminal cancer in various parts of her body, including her bones.
 {¶ 6} On January 21, 1999 Plaintiffs filed a medical malpractice suit against Troy Radiologists, Dr. Bellas, and Dr. Anderson. The case proceeded to trial on July 8, 2002. During the trial, Dr. Bellas moved for a directed verdict because Plaintiffs failed to offer evidence that any act or failure to act on his part proximately caused her injury. Specifically, Plaintiffs offered no evidence that a diagnosis of breast cancer would have in all probability resulted if the 1993 films had been available to Dr. Anderson in 1996. The trial court granted the motion, and the case proceeded against Troy Radiologists and Dr. Anderson. The jury returned a verdict against the plaintiffs, who filed a timely notice of appeal.
 {¶ 7} Collias' first assignment of error:
 {¶ 8} "The trial court erred to the prejudice of the plaintiffs when on defendants' motion for a directed verdict, it dismissed defendant bellas prior to the submission of the case to the jury."
 {¶ 9} Collias argues that the trial court misapplied Ohio law when it concluded that expert testimony was required to "causally relate" Dr. Bellas' failure to provide Collias' 1993 mammogram results to Dr. Anderson in 1996. We disagree.
 {¶ 10} We initially note that Plaintiffs never pled or argued in the trial court that expert testimony was not necessary to prove their claim against Dr. Bellas because it was a failure to communicate claim. "[R]eviewing courts do not consider questions not presented to the court whose judgment is sought to be reversed." State ex rel. Porter v.Cleveland Dept. of Public Safety (1998), 84 Ohio St.3d 258, 259,703 N.E.2d 308. Because Collias failed to raise this issue in the trial court, we need not consider her first assignment of error. Nevertheless, we feel that it is necessary to point out that Collias' argument, even if it had been preserved for review, is incorrect.
 {¶ 11} In order to establish a claim for medical malpractice, a plaintiff must show by a preponderance of the evidence: (1) a duty on behalf of the physician-defendant to the plaintiff; (2) the standard of care recognized by the medical community; (3) the failure of the defendant to meet that standard of care; and (4) a causal link between the negligent act and the injuries sustained. Bruni v. Tatsumi (1976),46 Ohio St.2d 127, 131, 346 N.E.2d 673, citations omitted. See, also,Roberts v. Ohio Permanente Med. Group, 76 Ohio St.3d 483,1996-Ohio-375. Furthermore, in order to establish these factors, the plaintiff must provide the competent testimony of a medical expert.Roberts, supra, at 485. Thus, Collias had to prove by competent medical testimony that the negligent acts of Dr. Bellas in failing to maintain her 1993 films were a direct and proximate cause of injury to her. See,Ramage v. Central Ohio Emergency Serv., Inc., 64 Ohio St.3d 97,1992-Ohio-109, paragraph 4 of the syllabus.
 {¶ 12} In support of her first assignment of error, Collias relies heavily upon our decision in Phillips, et al. v. Good SamaritanHospital, et al. (1979), 65 Ohio App.2d 112, 416 N.E.2d 646. However, that reliance is misplaced. In Phillips the radiologist had diagnosed a break in the patient's arm but failed to advise the treating physician. In this case, however, Dr. Bellas never failed to advise anyone of a diagnosis of cancer. To the contrary, he found no indication of cancer, and he so advised both Collias and her family doctor.
 {¶ 13} Additionally, we note that not only did Collias fail to offer expert testimony linking Dr. Bellas' actions to her injury, her own expert witness negated the existence of such a connection. In fact, Dr. Foley acknowledged that radiology departments misplace films every day. Moreover, he extensively explained why Dr. Anderson should have ordered a biopsy based only on the calcifications seen in the 1996 mammogram. Neither Dr. Foley nor any other witness testified that the calcifications would have been significant only if the 1993 films had been available for review.
 {¶ 14} Because Plaintiffs offered no expert testimony that the 1993 films would, in all probability, have made any difference in Collias' diagnosis or prognosis, the trial court did not err in granting Dr. Bellas' motion for a directed verdict. Collias' first assignment of error is overruled.
 {¶ 15} Collias' second assignment of error:
 {¶ 16} "The trial court erred to the prejudice of the plaintiffs when it prevented evidence or reasons for the breach of defendant Anderson's duty of care to be presented to the jury."
 {¶ 17} Here Collias claims that the trial court wrongly excluded evidence regarding her 1993 mammogram from the jury. We disagree.
 {¶ 18} Evidence regarding the loss of the 1993 films related only to Collias' claim against Dr. Bellas. There was no evidence that Dr. Anderson breached the standard of care by failing to find the films despite her reasonable attempts to do so. In fact, as discussed above, Dr. Foley testified that based solely upon the 1996 mammogram, Dr. Anderson should have ordered a biopsy. Therefore, once Dr. Bellas had been dismissed from the case, such evidence had little relevance, if any, as it related to Collias' claim against Dr. Anderson.
 {¶ 19} Accordingly, Collias' second assignment of error is without merit and is overruled.
 {¶ 20} Having overruled both of Collias' assignments of error, the judgment of the trial court is Affirmed.
Brogan, J. and Wolff, J., concur.