[Cite as *Reilly v. Rastegar*, 2026-Ohio-208.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| COLLEEN M. REILLY | : | |
| | : | C.A. No. 30464 |
| Appellant | : | |
| | : | Trial Court Case No. 2023 CV 02320 |
| v. | : | |
| | : | (Civil Appeal from Common Pleas |
| FARBOD RASTEGAR, M.D., et al. | : | Court) |
| | : | |
| Appellees | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on January 23, 2026, the judgment of the trial court is reversed and remanded for further proceedings consistent with the opinion.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

*Mary K. Huffman*

MARY K. HUFFMAN, JUDGE

TUCKER, J., and HANSEMAN, J., concur.

THOMAS J. INTILI, Attorney for Appellant
JOHN F. HAVILAND, AMBER R. MULLALY, and JAREN A. HARDESTY, Attorneys for Appellee Atrium Medical Center

HUFFMAN, J.

{¶ 1} Plaintiff-appellant Colleen Reilly appeals from the trial court's order granting summary judgment in favor of defendant-appellee Atrium Medical Center on Reilly's respondeat superior claim, which derives from her medical negligence claim against defendant-employee Darcie McIntyre, a surgical scrub technician at Atrium. In granting summary judgment, the trial court found that expert testimony was necessary to address both the alleged negligence of McIntyre's failure to follow the order of defendant-surgeon Dr. Farbod Rastegar and the proximate cause of Reilly's injury. According to the trial court, absent such evidence, the record before the court was insufficient to create a genuine issue of material fact precluding summary judgment.

{¶ 2} However, the record before the trial court, particularly the deposition testimony of Dr. Rastegar, indicates that the doctor had ordered McIntyre not to place a particular instrument on his surgical tray, and McIntyre failed to follow that order. McIntyre ultimately handed the wrong instrument to Dr. Rastegar during Reilly's surgery, and Reilly was injured. In this negligence action that involves conduct within the common knowledge and experience of jurors—a hospital staff member's failure to follow physician orders—additional expert testimony beyond that of Dr. Rastegar was not necessary to create a genuine issue of material fact regarding Atrium's vicarious liability based on the alleged negligence of McIntyre.

{¶ 3} Finding merit to this appeal, we reverse the trial court's judgment and remand this matter to the trial court.

## I.     Background Facts and Procedural History

{¶ 4} In January 2022, Reilly underwent spinal surgery while in the care of Dr. Rastegar, an orthopedic spine surgeon at Atrium. Reilly's surgical procedure was an anterior cervical discectomy and fusion ("ACDF"), which involved the placement of a cervical interbody implant into her cervical spine using a device known as an "inserter." Inserters come with or without a small flange, commonly known as a "depth stop," and the depth stop serves as a tool to prevent the surgeon from inserting the implant too deeply into a patient's spinal canal.

{¶ 5} Dr. Rastegar preferred to use, and always had used, an inserter with a depth stop when performing ACDF cases. During Reilly's surgical case, however, McIntyre handed Dr. Rastegar an inserter without a depth stop, and Dr. Rastegar inserted the implant too deeply, which resulted in Reilly's spinal cord injury. At the time of Reilly's injury, Dr. Rastegar was unable to see that he was using an inserter without a depth stop due to the magnification of his visual field, which was necessary to perform the procedure.

{¶ 6} Reilly remained in Dr. Rastegar's care for about a year after her injury, during which Dr. Rastegar performed a subsequent surgery to try to correct the initial injury. In May 2023, Reilly filed a complaint for medical negligence against Dr. Rastegar and several of Atrium's employees, including McIntyre, alleging that Atrium was vicariously liable for McIntyre's negligent conduct in handing Dr. Rastegar an inserter without a depth stop, which resulted in her injury.

{¶ 7} As part of discovery in this matter, Dr. Rastegar testified during his deposition that he had never used an inserter without a depth stop during ACDF cases and that he had

3

communicated his instrument preference (i.e., an inserter with a depth stop) to "everyone," including hospital staff, like McIntyre, and leadership. He had also emphasized to the same personnel that he did not want any redundant instrumentation on his surgical trays and that an inserter without a depth stop was, in fact, a redundant instrument. He stated that in the approximately thirty ACDF cases that he had done at Atrium prior to Reilly's surgery, he had always been handed his preferred inserter with a depth stop, but in Reilly's case, McIntyre unexpectedly handed him an inserter without a depth stop despite his instructions. According to Dr. Rastegar, this resulted in his using the wrong inserter, inserting the cervical implant too deeply into Reilly's spinal canal and injuring her.

{¶ 8} In December 2024, Reilly produced her expert's report authored by Dr. Ali Moshifar. Dr. Moshifar opined that Dr. Rastegar had deviated from the orthopedic spine surgery standard of care resulting in Reilly's injury. Dr. Moshifar, however, did not render any expert opinions regarding McIntyre's conduct. Dr. Bradford Mullin and Dr. Rastegar provided affidavits that did not identify any member of Atrium's staff as negligent. Thereafter, Atrium moved for summary judgment based on Reilly's failure to produce an expert report setting forth evidence regarding McIntyre's negligence.

{¶ 9} In ruling on Atrium's summary judgment motion, the trial court determined that expert testimony was necessary to establish that McIntyre had acted negligently by handing Dr. Rastegar an inserter without a depth stop. The court essentially found that even if Dr. Rastegar's deposition testimony had implicated the hospital's staff, including McIntyre, as contributors to Reilly's injury, Atrium satisfied its summary judgment burden because there was no expert testimony alleging a departure from the standard of care by Atrium's staff members or that such alleged negligence was a proximate cause of Reilly's injury.

4

{¶ 10} The trial court acknowledged, however, that there was evidence that Dr. Rastegar had ordered McIntyre not to place inserters without depth stops on his surgical trays and that McInture failed to follow that order, ultimately handing Dr. Rastegar such an inserter during Reilly's surgery. The court opined that Dr. Rastegar's testimony—suggesting that Reilly's injury was caused by the improper insertion of the implant due to an incorrect instrument—was insufficient because he did not express that opinion in terms of probability. The court emphasized that expert testimony was necessary to establish that McIntyre acted negligently, as Reilly's claim was for medical negligence and thus required expert testimony regarding the standard of care and proximate cause.

{¶ 11} The trial court further reasoned that the "common knowledge" exception to the general rule—that expert testimony is necessary in actions involving the negligence of a medical professional—did not apply. The court stated that McIntyre's occupational field involved professional skill and highly technical scientific questions, and thus expert testimony was required to address the standard of care required of a surgical scrub technician in managing instruments and the question of whether a breach of the standard of care could lead to injury. The court concluded that there were no genuine issues of material fact regarding McIntyre's alleged negligence, and Atrium was therefore entitled to summary judgment on Reilly's respondeat superior liability claim.

## II. Assignment of Error

{¶ 12} Reilly appeals the trial court's decision, raising one assignment of error:

THE TRIAL COURT ERRED WHEN IT ENTERED SUMMARY JUDGMENT FOR DEFENDANT-APPELLEE ATRIUM MEDICAL CENTER BASED ON THE LACK OF EXPERT WITNESS TESTIMONY FOR PLAINTIFF-

5

APPELLANT THAT A HOSPITAL-EMPLOYED SURGICAL SCRUB TECHNICIAN WAS NEGLIGENT.

*Standard of Review*

{¶ 13} Pursuant to Civ.R. 56(C), a movant is entitled to summary judgment when that party demonstrates that there is (1) no issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to the non-moving party. *Rhododendron Holdings, LLC v. Harris*, 2021-Ohio-147, ¶ 22 (2d Dist.). "Summary judgment is a potentially useful, but extraordinary, procedure wherein the trial of issues of fact made up by the pleadings is avoided." *AAAA Enters., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St. 3d 157, 161 (1990).

{¶ 14} Because summary judgment is "a shortcut through the normal litigation process by avoiding a trial," the burden of demonstrating that no genuine issues exist as to any material fact strictly falls upon the moving party requesting summary judgment. *Id.*; *see also Harless v. Willis Day Warehousing Co., Inc.*, 54 Ohio St.2d 64, 66 (1978). Once the moving party has satisfied its burden of showing that there is no genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing a genuine issue for trial. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The nonmoving party cannot rely upon the mere allegations or denials in the pleadings but must give specific facts showing that there is a genuine issue for trial. Civ.R. 56(E); *Accord Geloff v. R.C. Hemm's Glass Shops, Inc.*, 2021-Ohio-394, ¶ 14 (2d Dist.).

{¶ 15} Although the party responding to a motion for judgment may have to overcome the burden of proof at trial, the party does not have that burden when responding to a summary judgment motion and may rely on evidentiary material already submitted by the

6

movant. *AAAA Enters.* at 161. Summary judgment "'must be awarded with caution, resolving doubts and construing evidence against the moving party, and granted only when it appears from the evidentiary material that reasonable minds can reach only an adverse conclusion as to the party opposing the motion.'" *Murphy v. Reynoldsburg*, 65 Ohio St. 3d 356, 358-59 (1992), quoting *Norris v. Ohio Std. Oil Co.*, 70 Ohio St.2d 1, 2 (1982).

{¶ 16} On summary judgment, whether a genuine issue of fact is material depends on the substantive law. *Barney v. Chi Chi's, Inc.*, 84 Ohio App. 3d 40, 43 (1992). "Only dispute over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. An issue of fact exists when the relevant factual allegations in the pleadings, affidavits, depositions, or interrogatories are in conflict. *Link v. Leadworks Corp.*, 79 Ohio App.3d 735, 741 (1992).

{¶ 17} We review the trial court's ruling on a summary judgment motion de novo. *Schroeder v. Henness*, 2013-Ohio-2767, ¶ 42 (2d Dist.).

*Summary Judgment Burden of Proof*

{¶ 18} On appeal, Reilly broadly asserts that the trial court erred when it entered summary judgment in favor of Atrium due to a lack of expert testimony that McIntyre was negligent. In support of her assignment of error, she presents three arguments. First, she contends that expert witness testimony was not necessary to prove McIntyre's negligence because there was no evidence that McIntyre's profession as an unlicensed surgical scrub technician required specialized knowledge, skill, training, or experience warranting expert testimony. She next argues that expert testimony was not necessary to prove McIntyre's negligence when there was sufficient evidence that McIntyre disregarded Dr. Rastegar's direct order regarding the instruments to be placed on his surgical tray, which resulted in her

7

injury. Finally, she contends that expert testimony was not necessary to prove McIntyre's negligence under the "common knowledge" exception to expert testimony.

{¶ 19} While Reilly asserts these three arguments, her principal arguments pertain to McIntyre's failure to ensure that no inserter without a depth stop was on Dr. Rastegar's tray and McIntyre's error in handing Dr. Rastegar such an inserter during her surgical case despite explicit instructions to the contrary. Reilly contends that McIntyre acted negligently when she failed to follow Dr. Rastegar's order and that additional expert testimony to prove her negligence was not necessary because her negligence in failing to follow Dr. Rastegar's order was within the common knowledge of a jury.

{¶ 20} In support of her arguments, Reilly points to Dr. Rastegar's deposition testimony in which he testified that he never used an inserter without a depth stop during ACDF surgeries; that he instructed "everyone" in his surgical orbit, including McIntyre, to never place an inserter without a depth stop on his surgical trays; that McIntyre handed him an inserter without a depth stop during Reilly's surgery; that he was not expecting to be handed such an inserter given his prior instructions; that he expected to be handed an inserter with a depth stop to prevent improper placement of the cervical implant into Reilly's spinal canal; and that because McIntyre handed him an inserter without a depth stop, he inadvertently introduced the cervical implant too deeply into Reilly's spinal canal, causing her injury.

{¶ 21} Based on these facts, Reilly maintains that the trial court erred in granting summary judgment in favor of Atrium based on her failure to produce expert testimony of McIntyre's alleged negligence. She contends that expert testimony regarding McIntyre's negligence was not necessary, as a surgical scrub technician is fundamentally required to follow the surgeon's orders, and for that reason, Reilly did not need expert testimony outside

8

of Dr. Rastegar's to establish a genuine issue of material fact precluding summary judgment. We agree.

{¶ 22} To prevail on a negligence action based on a medical claim, a plaintiff must demonstrate (1) the existence of a standard of care within the medical community; (2) the defendant's breach of that standard; and (3) proximate cause between the medical negligence and the injury. *Adams v. Kurz*, 2010-Ohio-2776, ¶ 11 (10th Dist.), citing *Williams v. Lo*, 2008-Ohio-2804, ¶ 11 (10th Dist.), citing *Campbell v. Ohio State Univ. Med. Ctr.*, 2004-Ohio-6072, ¶ 10 (10th Dist.).

{¶ 23} "Under the doctrine of respondeat superior, a hospital is liable for the negligent acts of its employees." *Berdyck v. Shinde*, 66 Ohio St.3d 573, 578 (1993), citing *Klema v. St. Elizabeth's Hosp. of Youngstown*, 170 Ohio St. 519 (1960). "The relevant questions in applying the doctrine of respondeat superior are: (1) whether the person who committed the negligent act was an employee of the hospital; and (2), if he or she was an employee, whether the act committed was within the scope of his employment." *Haney v. Barringer*, 2007-Ohio-7214, ¶ 46 (7th Dist.), citing *Klema* at 527. A hospital is liable for the negligence of its employee "whether the employee's actions are administrative or medical." *Id.*, citing *Klema* at paragraph two of the syllabus. Under this doctrine, a hospital may be held vicariously liable "for the failure of its employees to follow the orders of an attending physician regarding a patient's medical care." *Albain v. Flower Hosp.*, 50 Ohio St.3d 251, 264 (1990) (citing cases), *overruled on other grounds by Clark v. Southview Hosp. & Family Health Ctr.*, 68 Ohio St.3d 435 (1994).

{¶ 24} On summary judgment, the burden of proof is on the non-moving party to establish that there is no genuine issue of material fact. In this case, it is undisputed that McIntyre handed Dr. Rastegar the wrong inserter without a depth stop despite Dr. Rastegar's

9

contrary orders. It is also undisputed that Reilly's injury occurred when Dr. Rastegar used that inserter and installed the implant too deeply into Reilly's surgical canal. The trial court even determined that Dr. Rastegar had ordered McIntyre not to place inserters without depth stops on his surgical trays and that McInture failed to follow that order by handing Dr. Rastegar such an inserter during Reilly's surgery.

{¶ 25} Because a hospital may be held vicariously liable for the failure of its employees to follow a physician's orders, as the record shows in this case, we conclude that the trial court erred in finding that Atrium had met its initial burden of proof establishing no genuine issue of material fact concerning McIntyre's negligence and Atrium's respondeat superior liability. Accordingly, because Atrium had not satisfied its initial burden, the reciprocal burden never shifted to Reilly to set forth specific facts showing a genuine issue for trial. Under these circumstances and based on the evidentiary materials already submitted (e.g., Dr. Rastegar's testimony), Reilly was not required to provide her own expert testimony or to otherwise demonstrate an issue for trial.

*"Common Knowledge" Exception to Expert Testimony*

{¶ 26} Expert-opinion evidence is generally "'required where the inquiry pertains to a highly technical question of science or art or to a particular professional or mechanical skill.'" *Rose v. Tievsky*, 2021-Ohio-3051, ¶ 47 (2d Dist.), quoting *Jones v. Hawkes Hosp. of Mt. Carmel*, 175 Ohio St. 503 (1964), paragraph one of the syllabus. For example, in a case for medical negligence against a physician, expert evidence is necessary to establish the physician's duty to the plaintiff, the applicable standard of care, the physician's failure to meet the standard of care, and a causal link between the negligent act and the plaintiff's injuries. *Collias v. Troy Radiologists, Inc.*, 2003-Ohio-6892, ¶ 11 (2d Dist.), citing *Bruni v. Tatsumi*, 46 Ohio St.2d 127, 131 (1976), and *Roberts v. Ohio Permanente Med. Group*,

76 Ohio St.3d 483, 485 (1996). Similarly, expert testimony is also often necessary in an action for nursing negligence: "In a negligence action involving the professional skill and judgment of a nurse, expert testimony must be presented to establish the prevailing standard of care, a breach of that standard, and that the nurse's negligence, if any, was the proximate cause of the patient's injury." *Ramage v. Cent. Ohio Emergency Servs., Inc.*, 64 Ohio St.3d 97 (1992), paragraph one of the syllabus; *see also Czarney v. Porter*, 2006-Ohio-2471, ¶ 25 (8th Dist.), quoting *Johnson v. Grant Hosp.*, 31 Ohio App.2d 118, 124-125 (10th Dist. 1972) ("Where the issue is one of an exercise of judgment or skill requiring the specialized training of a nurse, expert-opinion evidence would be required"), *reversed on other grounds*, 32 Ohio St.2d 169 (1972).

{¶ 27} However, there is a "common knowledge exception" to the general rule that expert testimony is necessary in actions involving the negligence of a medical professional. *See Bruni* at 130 (exception as applied to medical malpractice), citing *Hubach* v. *Cole*, 133 Ohio St. 137 (1938), and *Morgan* v. *Sheppard*, 91 Ohio Law Abs. 579 (8th Dist. 1963); *Ramage* at 103 (exception as applied to nursing negligence). "Under this exception, matters of common knowledge and experience, subjects which are within the ordinary, common and general knowledge and experience of mankind, need not be established by expert opinion testimony." *Ramage* at 103, citing *Johnson* at 124-125; *see also Jones* at 503, paragraph one of the syllabus ("Expert-opinion evidence is not required or necessary where the subject of the inquiry is within the common, ordinary and general experience and knowledge of mankind, but such evidence is required where the inquiry pertains to a highly technical question of science or art or to a particular professional or mechanical skill.").

{¶ 28} In accordance with the "common knowledge" exception, courts have concluded that expert testimony was not necessary in certain medical negligence actions.

11

For example, in *Czarney v. Porter*, an estate administrator filed a medical malpractice complaint against a hospital association following the decedent's death. *Czarney* at ¶ 2. The administrator's claim against the hospital's employees related to the nurses' failure to follow physician orders on the administration of fluids and the placement of the decedent on a telemetry monitor. *Id*. at ¶ 29. The court agreed that the administration of fluids was outside the realm of the knowledge and experience of average jurors, but the concept of following orders was not. *Id*. at ¶ 32. The court held that "expert testimony was not required to show that the nursing staff may have been negligent in failing to follow physician orders." *Id*. at ¶ 33. Reilly argues that under this reasoning, additional expert testimony was not necessary to preclude summary judgment on Reilly's claim against Atrium for McIntyre's alleged negligence.

{¶ 29} In the case before us, even if the burden of proof had shifted to Reilly, we do not believe that additional expert testimony was necessary to create a genuine issue of material fact precluding summary judgment. We recognize that it is well settled that expert testimony is necessary to establish the prevailing standard of care where the professional skills and judgment of a nurse, for example, are alleged to be deficient. *Czarney*, 2006-Ohio-2471, at ¶ 24 (8th Dist.), citing *Sullins v. Univ. Hosps.*, 2003-Ohio-398 (8th Dist.). "However, expert testimony is not required in a negligence action involving conduct within the common knowledge and experience of jurors," including when the negligence claim is based on a failure to follow physician orders. *Czarney* at ¶ 26, 33, citing *Ramage*, 64 Ohio St.3d 97, at paragraph one of the syllabus. We agree with Atrium that the technical aspects of a surgical scrub technician's profession are outside the realm of the knowledge and experience of average jurors, but the concept of following orders is not. *See Czarney* at ¶ 32. Thus, while there is no bright-line rule, when a surgeon gives an order that is not followed

by a surgical scrub technician, expert testimony may not be required to prove the technician's conduct was negligent.

{¶ 30} Here, Dr. Rastegar testified that he had communicated to "everyone," including hospital staff and leadership, his preference of an inserter with a depth stop. He had also emphasized to the same personnel that he did not want any redundant instrumentation on his surgical trays. He stated that an inserter without a depth stop was a redundant instrument and that in the prior ACDF cases that he had done at Atrium, he had always been handed his preferred inserter with a depth stop. He asserted that due to the inclusion of an inserter without a depth stop on his surgical tray, he was handed the wrong instrument by McIntyre, and consequently he inserted the implant too deeply into Reilly's spine.

{¶ 31} We conclude that the reasoning in *Czarney* is applicable to this case. Although McIntyre is not a nurse, she is a surgical scrub technician, who, like a nurse, is expected to follow physician orders. The evidence in this case is clear that Dr. Rastegar gave explicit orders regarding the instruments required for him to safely perform Reilly's case, and there is evidence that this order was not followed. Accordingly, expert testimony outside of Dr. Rastegar's own testimony with respect to the instrument instructions given to McIntyre was not required to show that McIntyre may have been negligent in failing to follow Dr. Rastegar's orders.

{¶ 32} We express no opinion as to whether McIntyre was negligent in her failure to follow Dr. Rastegar's orders regarding his surgical tray instruments or that her alleged negligence proximately caused Reilly's injury. Likewise, we need not consider whether expert testimony concerning a surgical scrub technician's negligence is universally unnecessary in a medical negligence action. We do, however, find that under the particular circumstances of this case, the testimony of Dr. Rastegar regarding McIntyre's failure to

13

follow his orders and Reilly's subsequent injury from an improper inserter was sufficient to create a genuine issue of material fact in this matter and that additional expert testimony beyond that of Dr. Rastegar was not necessary.

{¶ 33} Because genuine issues of material fact remained as to whether McIntyre was negligent in failing to follow Dr. Rastegar's orders regarding his tray instruments and whether that negligence caused Reilly's injury, the trial court erred in granting summary judgment in favor of Atrium on Reilly's claim for respondeat superior liability. It will be a jury's responsibility to weigh the evidence and credibility of the witnesses and ultimately decide whether those alleged failures contributed to or caused Reilly's injury.

{¶ 34} Reilly's assignment of error is sustained.

### III.     Conclusion

{¶ 35} For the foregoing reasons, the judgment of the trial court is reversed, and this matter is remanded to the trial court.

. . . . . . . . . . . . .

TUCKER, J., and HANSEMAN, J., concur.

14